WILLIAM C. KARDAS *vs.* BOARD OF SELECTMEN OF DEDHAM & others.[1]

Norfolk.    February 14, 1979. — July 31, 1979.

Present: GRANT, ROSE, & DREBEN, JJ.

*Statute*, Construction. *Municipal Corporations*, Police. *Police*, Salary of police chief.

Statute 1974, c. 610, was enacted to make a minor corrective change in St. 1974, c. 415, § 1, and was not intended to repeal c. 415, § 2. [187-189]

Under the provision of G. L. c. 48, § 57G, establishing the rate of compensation of a chief of police as a multiple ("ratio") of "the highest annual rate of compensation" of a full-time police officer or patrolman, the police chief's compensation is to be based not on the annual rate of compensation of the highest paid individual police officer on the force but rather is to be based on the highest rate in the schedule of wages and salaries established for permanent, full-time police officers or patrolmen. [189-191]

In determining the rate of compensation due a chief of police under G. L. c. 48, § 57G, "the highest annual rate of compensation" of a

---

[1] The other defendants are the comptroller and the treasurer of the town.

police officer does not include payments received by a policeman under the career incentive pay act. [191-193]

This court declined to consider a police chief's argument that a board of selectmen acted arbitrarily by according disparate treatment under G. L. c. 48, § 57G, to the town's police chief and its fire chief where there was no evidentiary basis for the claim. [193]

This court declined to review a judge's denial of the plaintiff's motion to modify the record under Mass.R.A.P. 8(e) in order to include a collective bargaining agreement where the document was unnecessary to a decision. [193]

CIVIL ACTION commenced in the Superior Court on January 21, 1977.

A motion for summary judgment was heard by *Brown, J.*, a District Court judge sitting under statutory authority.

*Richard J. Cass* for the plaintiff.

*Paul G. Maggioni*, Town Counsel, for the defendants.

ROSE, J. The issue to be resolved in this case is the proper rate of compensation for the plaintiff, the chief of police of Dedham. Under G. L. c. 48, § 57G (the ratio act),[2] the plaintiff is entitled to receive an "annual base rate of compensation" not less than twice "the highest annual rate of compensation" of a full-time police officer or patrolman. Specifically, we must decide the basic question whether career incentive pay, authorized under G. L. c. 41, § 108L (the career incentive pay act),[3] is to be includ-

---

[2] General Laws c. 48, § 57G, as amended through St. 1975, c. 333, provides in pertinent part that "the permanent, full-time chief of police ... in any city, other than Boston, or town ... shall receive an annual base rate of compensation which shall not be less than the following ratios of the highest annual rate of compensation of ... a permanent, full-time police officer or patrolman .... In departments having thirty or more permanent, full-time police officers ... the ratio shall be 2.0." The Dedham police department has more than thirty full-time police officers.

[3] General Laws c. 41, § 108L, as appearing in St. 1976, c. 480, § 9, established a career incentive pay program offering "base salary increases to regular full-time members of" police departments "as a reward for furthering their education in the field of policework." Salary increases are based on credit points earned for semester hours completed in associate, baccalaureate or graduate degree programs. The act was accepted by the town of Dedham on March 13, 1972.

ed in addition to a patrolman's base salary in determining "the highest annual rate of compensation" of a full-time patrolman.

The plaintiff was appointed chief of police in Dedham in 1973. As of December 31, 1976, the selectmen established the plaintiff's salary using the statutory formula cited in note 2, *supra*, and included in their calculations the highest paid full-time patrolman's base pay, night differential pay, holiday pay (for eleven paid holidays) and career incentive pay.[4] On January 6, 1977, the selectmen voted to instruct the comptroller to withhold all payments to the police chief in excess of the exact computation of two times the base salary of the highest paid full-time patrolman, eliminating from their calculations under the statutory formula the patrolman's night differential pay, holiday pay and career incentive pay.[5] The plaintiff brought this action, contending that the board had violated the law by withholding from him his proper rate of compensation.[6]

---

[4] According to this formula, the plaintiff, as of December 31, 1976, received $32,458 per year.

[5] As of January 1, 1977, the plaintiff received $26,162 per year, plus an allowance for compensation at a per diem rate for any holidays actually worked.

[6] The plaintiff contends that the highest paid patrolman's pay during the first six months of 1977 was $18,047. Thus, he contends that his salary, based on a computation of two times "the highest annual rate of compensation" of a full time patrolman as of January 1, 1977, should have been $36,094.

Although it appears from the record that night differential pay was included in the defendants' calculations prior to January 6, 1977, the plaintiff in his complaint stated that overtime, night differential pay and extra paid details were excluded from the defendants' calculations, and the plaintiff has not argued on appeal that any of those items should be included in the computation of his salary. Thus, there is no issue before us concerning any of those items of compensation. The judge, however, erred in including night differential pay in the judgment, and we have modified the judgment accordingly in part 5 of this opinion.

On the plaintiff's motion for summary judgment, the judge entered judgment for the defendants. The judge ruled that under the provisions of the ratio act career incentive pay should not be included in determining the highest annual rate of compensation of a full-time patrolman, since such pay is a benefit available only to individual police officers who fulfill certain requirements and not a general benefit due all officers. The judge ruled that the only other category of payment, in addition to a patrolman's base salary, which does not vary among individual officers and which is general enough to constitute the annual rate of compensation of a patrolman for the purposes of the ratio act is holiday pay.[7] The plaintiff appealed from the judgment and from the denial of his motion to correct or modify the record under Mass.R.A.P. 8(e), 365 Mass. 851 (1974).[8] We affirm the judgment as modified in part 5 of this opinion.

1. *Applicability of the ratio act, G. L. c. 48, § 57G.* We must first determine whether the town is bound by the provisions of the ratio act. As originally enacted in 1971, the act was mandatory in all cities and towns except Boston. By St. 1974, c. 415, § 1, the act was made subject to local acceptance. Section 2 of the 1974 statute made the acceptance provision applicable "only to a person appointed as a police chief . . . upon the death or retirement of a person who is the incumbent of the office of police chief . . . on the effective date of this act."[9]

---

[7] On appeal, the defendants argue that the judge's inclusion of holiday pay in the formula was erroneous. This contention is not properly before us, since the defendants took no appeal from the judgment, and are not entitled to have it revised in their favor on the plaintiff's appeal. *Welsch* v. *Palumbo,* 321 Mass. 399, 400 (1947). *Herman* v. *Edington,* 331 Mass. 310, 316 (1954). *C.J. Hogan, Inc.* v. *Atlantic Corp.,* 332 Mass. 322, 327-328 (1955). *Leisure Inns, Inc.* v. *Christiansen,* 7 Mass. App. Ct. 877 (1979). But cf. *O'Connor* v. *City Manager of Medford,* 7 Mass. App. Ct. 615, 618 (1979).

[8] The plaintiff's petition to review the denial of his motion was denied by a single justice of this court without prejudice to the plaintiff's raising the issue before this panel.

[9] Statute 1974, c. 415, § 1, provided: "Section 57G of chapter 48 of the

An issue arises regarding St. 1974, c. 610, entitled "An Act making a corrective change in the law providing for the acceptance by cities, towns and fire districts of the law relative to the compensation of police and fire chiefs."[10] The corrective act made the change in St. 1974, c. 415, § 1, set out in n.10 hereof, and § 2 of the corrective act provided that it would take effect as of June 26, 1974, which was the effective date of c. 415. The defendants contend that since there is no reference in the corrective act to St. 1974, c. 415, § 2, the provision which precluded a town from exercising its option as to incumbents, that provision was not reenacted and was effectively repealed. They argue, therefore, that the local acceptance provision in the ratio act is operative as to all police chiefs, and that because the town of Dedham has never accepted the ratio act, the town is not bound by its provisions, and the selectmen may set the police chief's salary as authorized by G. L. c. 41, § 97A, which the town accepted in 1949.

We think this argument is readily dismissed by reference to the established rule of statutory construction that a "statute is not to be deemed to repeal or supersede a prior statute in whole or in part in the absence of express words to that effect or of clear implication." *Cohen* v. *Price*, 273 Mass. 303, 309 (1930), quoted in *Colt* v. *Fradkin*, 361 Mass. 447, 449-450 (1972), and in *Commonwealth* v.

General Laws, inserted by chapter 1182 of the acts of 1971, is hereby amended by adding the following paragraph: The provisions of this section relative to a city, town or fire district shall be in effect only in a city, town or fire district which accepts this section."

Statute 1974, c. 415, § 2, provided: "The provisions of [G. L. c. 48, § 57G], inserted by section one of this act, shall apply only to a person appointed as a police chief or fire chief upon the death or retirement of a person who is the incumbent of the office of police chief or fire chief on the effective date of this act."

[10] Statute 1974, c. 415, § 1, had referred to "Section 57G of chapter 48 of the General Laws, inserted by chapter *1182* of the acts of 1971." To correct this misprint, the reference was amended by St. 1974, c. 610, § 1, to read "inserted by chapter *1082* of the acts of 1971" (emphasis supplied).

*Hayes,* 372 Mass. 505, 512 (1977). "When an act purports to amend and reenact as amended certain designated sections of a prior act, the other sections thereof are not repealed by the failure of the act to reenact them." Sands, Sutherland Statutory Construction § 22.32 n.2 (4th ed. 1972). See *Sambor* v. *Home Owners' Loan Corp.*, 283 Mich. 529, 531-532 (1938).

In light of the statutes involved and the title given to c. 610 by the Legislature, we conclude that St. 1974, c. 610, was enacted to make a minor corrective change in St. 1974, c. 415, § 1, and was not intended to repeal c. 415, § 2. Had the Legislature intended to make a substantive change in the provisions of the ratio act (as the defendants argue they did, by implication), we think that explicit language to that effect would have been the appropriate vehicle. We conclude that the ratio act is binding on the defendants in this case and that the plaintiff's salary is to be set according to its provisions. We turn next to the proper interpretation of those provisions.

2. *Interpretation of the ratio act, G. L. c. 48, § 57G.* On the basis of the statutory language which he found clear and unambiguous, the judge ruled that a full-time patrolman's base salary and holiday pay should be included in the computation of the police chief's salary and that career incentive pay should be excluded. The judge's ruling was based in part upon the affidavits of the plaintiff, of Officer Edward F. Sullivan, Jr., a Dedham patrolman, and of the comptroller of the town, submitted by the plaintiff. The judge found that the "highest annual rate of compensation . . . of a permanent, full time police officer" in the Dedham police department is the base salary of Officer Sullivan, as set out in his affidavit. The judge also included holiday pay in his computation, based on the reasoning that these are "categor[ies] of payment which [do] not vary among individual officers and which all police officers have a vested right to receive at the beginning of each year since [they are] not subject to any condition subsequent . . . . These are the only categories

of compensation which are general enough to constitute the annual rate of compensation from which the Chief of Police's salary is calculated." Career incentive pay, the judge ruled, "is a benefit applicable to individual police officers who have taken courses to further their education. It is not a general benefit available to all police officers and should not be included in determining the 'highest annual rate of compensation.' "

We begin our analysis by focusing on the statutory language itself, as "the principal source of insight" into legislative intent. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). It appears that the parties, as well as the judge, have interpreted the phrase "the highest annual rate of compensation of . . . a permanent, full-time police officer or patrolman" to mean the annual rate of compensation of the highest paid individual police officer in the city or town. This interpretation of the statutory language necessarily raises questions concerning which items of compensation received by the highest paid officer are to be included in determining his annual rate of compensation.

There is, however, a more compelling interpretation of the statutory language. We think the above-quoted phrase refers not to the annual compensation received by the highest paid individual officer in a city or town, but rather to the highest rate in the schedule of wages and salaries established in accordance with legislation or by contract for the designated category of employees, the category being that of permanent, full-time police officers or patrolmen.[11] The phrase "a permanent, full-time police officer or patrolman" can most reasonably be read to designate a general category of employees. We find support for this conclusion in *Labor Relations Commn.* v. *Natick*, 369 Mass. 431, 439 n.6 (1976), in which the court stated that "under G. L. c. 48, § 57G, as amended by St. 1974, c. 415, § 1, if that section is accepted by the mu-

_____

[11] Officer Sullivan falls within this category.

nicipality, a police or fire chief's salary must be established at a proportion in excess of that of permanent, full-time fire fighters or police officers . . . ." Had the Legislature intended the formula to be based on the salary of an individual selected on the basis of the highest income, we think that a more logical communication of such intent would have been a reference to "the annual rate of compensation of the highest paid permanent, full-time police officer or patrolman."

In support of his contention that career incentive pay received by a police officer should be included in the calculation of a police chief's salary, the plaintiff focuses on the 1975 amendment to the ratio act. By St. 1975, c. 333, the Legislature inserted the word "base" after the word "annual" in the phrase "annual rate of compensation" as that phrase applies to a chief of police.[12] The plaintiff argues that since the Legislature inserted the word "base" with reference to the police chief's rate of compensation but did not do so with reference to the "annual rate of compensation" of a full-time patrolman, it must have intended a broader meaning for "rate of compensation" in the latter use of the phrase. He argues, therefore, that the "annual rate of compensation" of a patrolman includes not only his base salary but also the "base salary increases" authorized under G. L. c. 41, § 108L, the career incentive pay act. He argues further than since career incentive pay is treated, according to a 1971 opinion by the Attorney General (Rep. A.G., Pub. Doc. No. 12, at 119 [1971]), as a permanent addition to salary for certain purposes (for example, in determining the amount of a police officer's pension upon retirement; the amount of group insurance coverage; the rate of overtime pay; and the amount of cost-of-living salary increases in certain cases), it should also be included in the computation of a police chief's salary.

---

[12] Section 2 of the 1975 act provided that a police chief's salary was not to be reduced by operation of § 1 of that act.

We are not persuaded by the plaintiff's arguments. As we read the language of the ratio act, the insertion of the word "base" by the Legislature was intended to indicate that a police chief's salary need not be limited to the minimum rate established by the statute, so that the selectmen of a town which accepts the ratio act have the option (subject to appropriation) to pay a chief of police a rate of compensation higher than the statutory minimum. It does not follow that the absence of the word "base" in the reference to a patrolman's annual rate of compensation reflects a deliberate decision by the Legislature to include in the formula any item of compensation in addition to a patrolman's base pay.

We see no indication in the ratio act to support the plaintiff's contention that the Legislature intended "base salary increases" offered under the career incentive pay act to certain members of police departments for furthering their education in the field of police work to be included in the formula for determining a police chief's salary. The fact that such increases are included in a police officer's *base* salary for purposes of determining certain benefits to which he is entitled has no bearing on the outcome of a case under the provisions of the ratio act. There is no basis for concluding that the Legislature intended a chief of police indirectly to receive benefits under the career incentive pay act which are available only to police officers who have actually taken educational courses in the field of police work. See *Palmer* v. *Selectmen of Marblehead,* 368 Mass. 620, 629 (1975).

We conclude that the judge was correct in deciding that "the highest annual rate of compensation" of a police officer does not include payments received under the career incentive pay act and in entering judgment for the defendants. According to our interpretation of the statute, the only component of compensation which should be included in the formula is the highest annual base salary of a permanent, full-time police officer or patrolman. The plaintiff's base rate of compensation is two times that

amount. All other items of compensation are excluded from the calculation.[13] In addition to his base rate of compensation thus computed, the plaintiff will of course receive any items of compensation to which he is entitled by law or by the terms of any contract he may have with the town.

3. The plaintiff's argument that the selectmen acted in an arbitrary and discriminatory manner by according disparate treatment under the ratio act to the town's police chief and its fire chief is not properly before us, for lack of any evidentiary basis laid at trial.

4. After judgment was entered for the defendants, the plaintiff brought a motion in the Superior Court to correct or modify the record under Mass.R.A.P. 8(e), in order to include the collective bargaining agreement between the town of Dedham and the Dedham police which had been offered in evidence during the hearing on the plaintiff's motion for summary judgment. The judge denied the motion to modify the record, stating that his decision and judgment were not based on the above-mentioned contract. The plaintiff now petitions this court to review the judge's denial of that motion. Since we also find the document in question unnecessary to our decision in this case, the plaintiff's petition is denied.

5. *Conclusion.* The judgment of the court is to be modified as follows. In his findings, rulings and order the judge ruled that the highest annual rate of compensation of a police officer from which the police chief's salary is to be calculated is $14,013.95. Although it is clear from the text of the judge's order that he did not intend to include night differential pay in the calculation, he apparently did so inadvertently. The record shows that in the affidavit of the highest paid Dedham police officer, on which the judge based his ruling, night differential pay (in the amount of $364) was not itemized separately but was included in the notation "annual base salary." Since it

---

[13] But see note 7, *supra.*

was error for the judge to include night differential pay in the calculation, the amount stated in the second paragraph of the judgment is to be revised accordingly. As so modified, the judgment is affirmed.

*So ordered.*