JAMES A. BOWERS, JR., JAMES A. BRANSON, BENJAMIN BROCKMAN, VAUGHN W. CRABB, BILLY R. GANT, HENRY L. JONES, LYMAN F. LANCE, JR., JERRY T. RICH, LINDSAY P. ROYAL, DAVID F. THOMPSON, PAUL D. WOOD, JR., AND MORRIS J. YANDLE v. CITY OF HIGH POINT

No. 316PA93

(Filed 30 December 1994)

## 1. Municipal Corporations § 219 (NCI4th)— law enforcement officers—retirement benefits—authority of city to interpret base rate

The assertions of an assistant city manager regarding plaintiff's separation allowance for early retirement were beyond the power of the city to make and cannot be enforced where plaintiffs worked as law enforcement officers for the City of High Point; they approached the assistant city manager for public safety regarding the computation of their separation allowance; the assistant city manager computed the allowance based on compensation including longevity, overtime, and accrued vacation; plaintiffs relied on the computation, retired, and began receiving benefits; the personnel director subsequently informed the city

manager that the separation allowance should not have been based on longevity, overtime, and accrued vacation; plaintiffs were informed that their benefits would be reduced and brought this suit; and the trial judge granted plaintiffs' motion for summary judgment. Municipalities can exercise only that power which the legislature has conferred upon them; under N.C.G.S. § 143-166.41(a), the legislature mandated that local government pay its law enforcement officers who retire before reaching age sixty-two and who meet certain other criteria an amount as set forth in the statute based upon the base rate of compensation. The legislature did not explicitly give local government the discretion to determine the base rate of compensation, which shows that it did not intend local government to have that discretion. Longevity, overtime, and accrued vacation should not have been included in the base rate because "base rate of compensation" refers to that portion of compensation which is relatively stable and forms the foundation or groundwork of the employee's entire compensation scheme.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 502 et seq.**

2. **Municipal Corporations § 234 (NCI4th)— law enforcement officers—early retirement—calculation of separation allowance—assertions by city ultra vires—city not estopped**

The City of High Point was not estopped from asserting *ultra vires* where plaintiffs worked for the City as police officers, they queried an assistant manager regarding the calculation of their separation allowance for early retirement, the assistant city manager calculated the allowance including longevity, overtime, and accrued vacation in the base rate calculation, plaintiffs retired and began drawing benefits, the City subsequently determined that the base rate should not have included longevity, overtime, and accrued vacation, and the benefits were reduced. The City had no authority under the relevant statute to enter into the agreement between the assistant city manager and plaintiffs, the agreement was *ultra vires*, and a city cannot be estopped from defending a contract action on the basis of *ultra vires*.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 523.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 110 N.C. App. 862, 431 S.E.2d 219 (1993), affirming summary judgment entered by Ross (Thomas W.), J., in the Superior Court, Guilford County, on 20 May 1992. Heard in the Supreme Court 16 March 1994.

*Byerly & Byerly, by W. B. Byerly, Jr., for plaintiff-appellees.*

*Fred P. Baggett and Roddy M. Ligon, Jr., for defendant-appellant.*

EXUM, Chief Justice.

Plaintiffs, former law enforcement officers for the City of High Point, filed this lawsuit alleging that defendant, the City of High Point, breached its contractual obligation to pay certain compensation promised in return for early retirement. Plaintiffs also sued for an unconstitutional impairment of contract, an unconstitutional taking, and a violation of 42 U.S.C. § 1983. Each party moved for summary judgment based on the pleadings, stipulations, and numerous affidavits. The trial court granted plaintiffs' motion for summary judgment and denied that of the defendant. The Court of Appeals affirmed, and we granted discretionary review.

I.

The facts are not in dispute:

Plaintiffs worked as law enforcement officers for the City of High Point. On 15 July 1986 the legislature enacted N.C.G.S. § 143-166.42, which states that local law enforcement officers retiring before age sixty-two are to receive the same "separation allowance" afforded State law enforcement officers under N.C.G.S. § 143-166.41; that law was to become effective 1 January 1987. 1985 N.C. Sess. Laws ch. 1019, § 2. Plaintiffs approached Randall W. Spencer, the Assistant City Manager for Public Safety, regarding how their separation allowance was computed under the new statute. Spencer's responsibilities included general personnel administration for the city's work force, including the police department.

In November or December of 1986 Spencer, relying on his reading of the statute and on the advice of the city attorney, other local government personnel administrators in the State, and the North Carolina League of Municipalities, computed the allowance based on the officer's compensation including longevity pay, overtime pay, and

accrued vacation. Longevity pay is an annual payment made to defendant's employees based on the employee's salary and number of years of service. Accrued vacation represents that vacation time earned by the employee but not used; upon termination of employment the employee is paid for the value of his unused vacation time. Neither the City Manager, H. Lewis Price, nor the City Council participated in Spencer's computation of benefits. Plaintiffs, relying on Spencer's computation of retirement compensation, retired from their jobs as law enforcement officers after January 1, 1987. They were paid in accordance with Spencer's computations.

During February 1990 John R. McCrary, the Personnel Director of the City of High Point, informed the City Manager, H. Lewis Price, that the amount the city had been paying plaintiffs was incorrect, being based on an erroneous interpretation of N.C.G.S. § 143-166.41. According to McCrary, the separation allowance should have been based on the law enforcement officer's compensation not including longevity pay, overtime pay, and accrued vacation. Price advised McCrary to inform plaintiffs that the amount they had been receiving was incorrect and that in the future they would not receive as much as they had been receiving based on Spencer's erroneous computation. In March 1990 McCrary wrote to plaintiffs explaining that their separation allowance had been computed erroneously and that their benefits would be reduced.[1] Plaintiffs then brought this suit asking the court to declare that plaintiffs were entitled to receive a separation allowance based on their compensation including longevity pay, overtime pay, and accrued vacation; they also asked the court to order defendant, "by mandamus or otherwise," to make payments in accordance with that amount.

The record clearly shows that defendant, through its agent Randall W. Spencer, represented to plaintiffs that they would receive a separation allowance under N.C.G.S. §§ 143-166.41 & 143-166.42 based on their pre-retirement compensation including longevity pay, overtime pay, and accrued vacation. Plaintiffs, acting in reliance on that representation, accepted early retirement after 1 January 1987. Plaintiffs assert that defendant's conduct, including that of Spencer, created a contractual obligation to pay plaintiffs according to Spencer's representations. On appeal to this Court defendant does not contend that plaintiffs' claims fail as a matter of contract law, and

---

1. The record shows that plaintiffs' average monthly allowance as originally calculated was approximately $800; the average monthly allowance after the reduction was $650.

the facts as contained in the pleadings, affidavits and stipulations would seem to refute any such contention. Defendant instead argues that Spencer's representations were *ultra vires*, or beyond the power of the city, and hence unenforceable. Plaintiffs argue in response that Spencer did not act *ultra vires*, and that in any event defendant is estopped from asserting the doctrine of *ultra vires* as a defense.

The only issues before us are, therefore, (1) whether Spencer's actions were *ultra vires* and, if so, (2) whether the city is estopped from asserting that defense.

## II.

[1] It is a well-established principle that municipalities, as creatures of the State, can exercise only that power which the legislature has conferred upon them. The authority of municipalities has been described as:

> (1) the powers granted in express terms; (2) those necessarily or fairly implied in or incident to the powers expressly granted; and (3) those essential to the accomplishment of the declared objects of the corporation—not simply convenient, but only those which are indispensable, to the accomplishment of the declared objects of the corporation.

*Moody v. Transylvania County*, 271 N.C. 384, 386, 156 S.E.2d 716, 717 (1967); *accord* 56 Am. Jur. 2d *Municipal Corporations* § 194 (1971). In this regard, the legislature has stated:

> It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter [Chapter 160A] and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect . . . .

N.C.G.S. § 160A-4 (1987). This statute, while reflecting our legislature's desire that cities should have the authority to exercise the powers conferred upon them, nevertheless clearly reiterates the principle that municipalities have only that power which the legislature has given them.

A contract made by a municipality beyond its power is unenforceable. *See Moody*, 271 N.C. at 388, 156 S.E.2d at 719.

The issue thus becomes whether the legislature authorized the city to enter contracts for separation allowances based on pre-retirement compensation including overtime pay, longevity pay, and accrued vacation.

The parties' arguments relating to whether Spencer's actions as an agent of the city were authorized by the legislature focus solely on Article 12D of Chapter 143 of the General Statutes. Section 143-166.41(a) in Article 12D states:

> [E]very sworn law-enforcement officer . . . employed by a State department, agency, or institution who qualifies under this section shall receive, beginning on the last day of the month in which he retires on a basic service retirement . . ., an annual separation allowance equal to eighty-five hundredths percent (.85%) of the annual equivalent of the base rate of compensation most recently applicable to him for each year of creditable service. . . .

N.C.G.S. § 143-166.41(A) (1993). In order to qualify, the officer must have attained fifty-five years of age, or have completed at least thirty years of creditable service, and not have attained sixty-two years of age. N.C.G.S. §§ 143-166.41(a)(1) & (2). Payments under this statute continue until the officer reaches age sixty-two. N.C.G.S. § 143-166.41(c). This section was made applicable to local law enforcement officers by section 143-166.42, which became effective 1 January 1987.

Thus, our legislature has mandated that local government pay its law enforcement officers who retire before reaching age sixty-two, and who meet certain other criteria, an amount each month as set forth in the statute. That monthly amount, according to the statute, is equal to: .0085 x "the annual equivalent of the base rate of compensation" x "each year of creditable service."

Plaintiffs argue that defendant did not act *ultra vires* in entering its agreement with plaintiffs since the statute gives local government the discretion to interpret "base rate of compensation." They further argue that defendant interpreted that phrase in a rational manner as including overtime pay, longevity pay, and accrued vacation. We cannot agree that the statute gives local government the discretion to interpret the statute.

In support of their contention, plaintiffs refer to section 143-166.42, which states that "the governing body of each unit of local government shall be responsible for making determinations of eligibility . . . and for making payments to their eligible officers . . . ." N.C.G.S. § 143-166.42

(1993). While this statute permits local governments to determine eligibility and requires them to make payments, it does not authorize local governments to determine the *amount* of the separation allowance differently from the mandate of section 143-166.41(a). The statute, which explicitly makes local government responsible for certain aspects of administering the separation allowance but does not explicitly make local government responsible for determining the amount of the allowance, is strong evidence that the legislature did not intend local governments to have that responsibility.

The legislature in numerous instances has explicitly given cities and towns the discretion to determine monetary amounts for various purposes. *See, e.g.*, N.C.G.S. § 160A-349.8 (1994) (board of cemetery trustees "shall fix a price" for lots and may change price "in the discretion of the board"); N.C.G.S. § 160A-610(21) (1994) (regional public transportation authority has authority "to set in its sole discretion rates, fees and charges"). That the legislature did not explicitly give local government the discretion to determine the "base rate of compensation" shows, we conclude, that it did not intend local governments to have that discretion.

Accepting plaintiffs' argument that local government has the discretion to interpret "base rate of compensation" could have several negative consequences. We agree with the Court of Appeals that the purpose of section 143-166.41 was to encourage early retirement. 110 N.C. App. at 865, 431 S.E.2d at 220. Permitting local governments to determine the amount of the separation allowance could frustrate the legislature's intent if local governments were to interpret that phrase in a manner that would effectively reduce the separation allowance. Also, it could require the courts constantly to review local governments' interpretations of "base rate of compensation" for rationality. For numerous reasons, we think the legislature wanted uniformity in the separation allowance it required local governments to pay pursuant to sections 143-166.41(a) and 143-166.42.

[2] Having determined that "base rate of compensation" has a definite meaning not subject to alteration by local governments, we must next determine whether that phrase includes plaintiffs' overtime pay, longevity pay, and accrued vacation pay.

The primary goal of statutory construction is to give effect to the legislature's intent. *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 294 (1975). To that end, a statute clear on its face must be enforced as

written. *Peele v. Finch*, 284 N.C. 375, 382, 200 S.E.2d 635, 640 (1973). We will presume that the legislature acted with care and deliberation, *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970), and, when appropriate, reference will be made to the purpose of the legislation, *Re Hardy*, 294 N.C. 90, 95-96, 240 S.E.2d 367, 371-72 (1978).

Although we are unable to set forth any rule which easily and conclusively determines what forms of compensation are to be included in "base rate of compensation," we are satisfied that the plain meaning of "base rate of compensation" does not include overtime pay, longevity pay, or pay for unused accrued vacation. "Base pay" is defined as "wages, *exclusive of overtime, bonuses, etc.*" Black's Law Dictionary 157 (6th ed. 1990) (emphasis added). "Pay" is defined as "[c]ompensation; wages; salary; commissions; fees," *id.* at 1128, and hence "base pay" is comparable to "base compensation." Thus, the accepted definition of "base pay" is a strong indication that the term does not include plaintiffs' overtime pay and is some indication that longevity pay and accrued vacation pay, which are arguably in the nature of "bonuses, etc.," should not be included either.[2]

To the extent that "base pay" is not synonymous with "base rate of compensation" and the definition of "base pay" is inconclusive with respect to longevity pay or accrued vacation pay, the statute indicates that the forms of payment at issue here are not to be included. "Base" is defined as "[b]ottom, foundation, groundwork, that on which a thing rests." Black's Law Dictionary 151. "Rate" is defined as "[p]roportional or relative value, measure, or degree." Id. at 1261. In the context of an employee's compensation, rate is proportional to, or relative to, some variable such as time or output and it tends to connote some degree of regularity or steadiness. We conclude, therefore, that "base rate of compensation" refers to that portion of compensation which is relatively stable and forms the "foundation" or "groundwork" of the employee's entire compensation scheme. This would generally be the minimum amount of compensation to which the employee is entitled in any given pay period relatively independent of factors other than the employment relationship itself.

2. In Article 6 of Chapter 135 of the General Statutes, dealing with disability income for state employees, "base rate of compensation" is defined as "the regular monthly rate of compensation not including pay for shift premiums, overtime, or other types of extraordinary pay; in all cases of doubt, the Board of Trustees [of the Teachers' and State Employees' Retirement System] shall determine what is 'base rate of compensation.' " N.C.G.S. § 135-101 (1992). While one particular use of a phrase can be persuasive as to another use of that phrase by the legislature, we do not find in this instance that the definition of "base rate of compensation" in Chapter 135 is useful to interpreting that phrase in Chapter 143. We also note that neither party made reference to this statute.

## BOWERS v. CITY OF HIGH POINT

[339 N.C. 413 (1994)]

Overtime pay is highly variable depending on the needs of the department in any given period of time. Before overtime hours have been assigned, and absent any reason to know that overtime hours will be assigned, an employee generally does not have an expectation that he will receive overtime pay. Overtime pay thus does not constitute a part of an employee's base rate of compensation. Similarly, the balance of accrued vacation, which changes as the employee takes vacation leave or accrues more vacation time, may fluctuate greatly over time. Also, as accrued vacation is payable only once upon separation from employment it is more like a bonus and less like a rate of compensation. That the stub accompanying the plaintiffs' paychecks clearly delineated payments for "REGULAR HRS" and "OVERTIME DOLLARS" and the balance of "VAC[ATION] LEAVE" indicates the parties themselves viewed pay for "regular hours" as distinct from pay for overtime and the balance of accrued vacation. We believe the legislature intended to exclude an item of payment from "base rate of compensation" when that item of payment is treated by the parties as distinct and separate from a base payment such as "regular hours."

Although longevity pay is a more stable, or predictable, form of payment than overtime pay or accrued vacation, we conclude that longevity pay is not included within the plain meaning of "base rate of compensation." Longevity pay was not included in the plaintiffs' regular paycheck. It was disbursed to them once annually. The annual amount of longevity pay was figured on the basis of the employee's length of service, and regular salary, or base compensation. The meaning of "base," as we have shown above, in the context of "base compensation" is foundation, or groundwork, or that on which something rests. Since longevity pay is figured on the basis of an employee's base compensation, longevity pay cannot logically be the same as or included within the term "base compensation."

While we can find no cases from other jurisdictions directly on point, numerous cases are generally consistent with our reasoning and our conclusion. In *Bruder v. Pension Plan for Employees of Holscher-Wernig, Inc.*, 599 F. Supp. 347 (E.D. Mo. 1984), the court faced whether a pension plan administrator's interpreting "basic rate of compensation," which affected the pension received, to exclude commissions was arbitrary and capricious. In concluding that the interpretation was reasonable, the court considered that the claimant received commissions "sporadically and in varying amounts" and that commissions "are [not] guaranteed in the same manner as monthly salaries." *Id.* at 350.

In *Ball v. District of Columbia*, 795 F. Supp. 461 (D.C. Cir. 1992), *remanded*, 22 F.3d 1184 (per curiam 1994),[3] the court was faced with whether firemen's "standby pay," which is a percentage of the "basic salary" designed to compensate the firemen for unusual schedules, was included in "basic rate of pay," which under federal law could not be reduced. In concluding that standby pay was included, the court reasoned that standby pay is included in every paycheck, that it does not vary with the type or number of hours worked, and that there was evidence that firemen were commonly paid standby pay as an extra premium. *Id.* at 464.

In *O'Haver v. City of Lubbock*, 815 S.W.2d 915 (Tex. App. 1991), the court was faced with whether an officer's "base salary," which by law had to be equal to the "base salary" of other police officers of the same class, included the value of the use of police vehicles during off-duty hours. In finding that it did not, the court looked to the synonymous term "base pay" which was defined as "the basic rate of pay for a particular job exclusive of overtime pay, bonuses, etc." *Id.* at 916 (citing Webster's Ninth New Collegiate Dictionary (1990)). The court reasoned that an officer's entire compensation "includes such items as base salary, plus overtime pay, longevity, or seniority pay, education incentive pay, assignment pay and certification pay." It concluded, "[t]he ordinary meaning of base salary excludes overtime pay, assignment pay, certification pay and other additional payments of compensation such as bonuses and allowances (e.g., car allowances)." *Id.* at 917.

In *Stover v. Retirement Board*, 78 Mich. App. 409, 260 N.W.2d 112 (1977), the court addressed whether payments for unused vacation were part of the "average final compensation" which affected the amount of retirement to be received by the plaintiff police officer. The court held that unused vacation was not to be included, reasoning:

> Annual compensation received does not include unused sick or vacation payments because those payments are not made regularly during a worker's tenure with the City. Those payments are properly viewed as a retirement bonus received at retirement and

---

3. On appeal the case was remanded without opinion. Although not a part of the official disposition, it appears that the parties jointly moved to remand the case. 1994 WL 179975. As the lower court opinion was not vacated or reversed, and the issues to be decided on remand were not set forth, we consider the lower court's holdings to remain intact. In any event the lower court opinion does not underpin our decision, but is merely illustrative of how other courts have treated this issue.

not as annual compensation received during a certain number of years immediately preceding the member's retirement.

*Id.* at 412-13, 260 N.W.2d at 114.

In *Kardas v. Board of Selectmen of Dedham,* 8 Mass. App. 184, 392 N.E.2d 544 (1979), the court faced the issue whether incentive pay was to be included in "highest annual rate of compensation," which affected the police chief's compensation. The court affirmed the trial court's conclusion that "highest annual rate of compensation" referred to the "base salary" and did not include incentive pay. *Id.* at 192, 392 S.E.2d at 548. The court seemed to affirm the reasoning of the trial court which was that incentive pay was "not a general benefit due all officers." *Id.* at 187, 392 S.E.2d at 546.

Although these cases involve benefits or statutory language different from that before us, we find these cases generally supportive of our interpretation of "base rate of compensation" in N.C.G.S. § 143-166.41, which we find excludes plaintiffs' overtime pay, longevity pay, and accrued vacation. The cases cited by plaintiffs do not involve the term "base pay" or "base compensation" or any analogous terms. *Abbott v. City of Los Angeles,* 178 Cal. App. 2d 204, 3 Cal. Rptr 127 (1960) ("salary"); *City of Long Beach v. Allen,* 143 Cal. App. 2d 35, 300 P.2d 356 (1956) ("salary"); *Kilfoil v. Johnson,* 135 Ind. App. 14, 191 N.E.2d 321 (1963) ("wages"); *Bower v. Contributory Retirement Appeal Bd.,* 393 Mass. 427, 471 N.E.2d 1296 (1984) ("regular compensation").

Thus, we conclude the term "base rate compensation" in section 143-166.41(a) of the statute has a fixed meaning and does not authorize local governments to award a separation allowance based on plaintiffs' overtime pay, longevity pay, or accrued vacation.

As plaintiffs have not pointed to a statute authorizing defendant to enter a contract for a separation allowance as represented by Spencer, and as plaintiffs have not argued that such authority is necessarily or fairly implied in an express power or that such power is essential and indispensable to defendant's declared objects, we conclude that Spencer's assertions regarding the separation allowance were beyond the power of the city to make; hence they cannot be enforced against the city.

III.

**[3]** Plaintiffs argue that even if Spencer's representations were *ultra vires*, or beyond the city's power, the city is nevertheless estopped to deny liability according to Spencer's representations. Plaintiffs provide no argument here other than to quote from *Pritchard v. Elizabeth City*, 81 N.C. App. 543, 344 S.E.2d 821, *disc. rev. denied*, 318 N.C. 417, 349 S.E.2d 598 (1986), and *May v. City of Kearney*, 145 Neb. 475, 17 N.W.2d 448 (1945), which we quoted in *Sykes v. Belk*, 278 N.C. 106, 179 S.E.2d 439 (1971).

We stated in *Moody v. Transylvania County*:

> If a contract is *ultra vires* it is wholly void and (1) no recovery can be had against the municipality; (2) there can be no ratification except by the Legislature; (3) the municipality cannot be estopped to deny the validity of the contract. The fact that the other party to the contract has fully performed his part of the contract, or has expended money on the faith thereof, will not preclude the city from pleading *ultra vires*.

271 N.C. at 388, 156 S.E.2d at 719. Consistent with that language, we have repeatedly held that a city cannot be estopped from defending a contract action on the basis of *ultra vires. Raleigh v. Fisher*, 232 N.C. 629, 635, 61 S.E.2d 897, 902 (1950); *Jenkins v. Henderson*, 214 N.C. 244, 248, 199 S.E. 37, 40 (1938); *accord Watauga County Bd. of Education v. Town of Boone*, 106 N.C. App. 270, 276-77, 416 S.E.2d 411, 415 (1992). We find 56 Am. Jur. 2d *Municipal Corporations* § 529 to be instructive on this point:

> In accordance with the general principle that where there is an entire absence of power on the part of a municipal corporation or political subdivision, it cannot be estopped in that regard, the rule is that such corporation or subdivision cannot be estopped to assert the invalidity of an *ultra vires* contract—that is, a contract which it had no power to make. The doctrine of estoppel cannot be applied against a municipal corporation, county, or other political subdivision to validate a contract which it has no power to make, even though the corporation has accepted the benefits thereof and the other party has fully performed his part of the agreement, or has expended large sums in preparation for performance. A reason frequently assigned for this rule is that to apply the doctrine of estoppel against a municipality in such case would be to enable it to do indirectly what it cannot do directly. . . .

In applying the doctrine of estoppel to municipal corporations, it is to be remembered that a municipal charter is in the nature of a power of attorney, and that the law holds those dealing with such corporations to a knowledge of the extent of the power thereby conferred, and of any restrictions imposed upon the manner of the exercise of the rights and duties thereby delegated, and visits upon such contracting parties the consequences of any violation of any essential statutory limitation, by refusing to enforce the offending contract, either directly or by way of estoppel. (Footnotes omitted.)

We have recognized that the doctrine of *ultra vires* "[u]ndoubtedly . . . entails much hardship" to those dealing with the municipality, *Fisher*, 232 N.C. at 635, 61 S.E.2d at 902, but pursuant to the principles set forth above in numerous cases, we must conclude that defendants are not estopped from asserting the defense of *ultra vires*.

This Court has never held that a municipality can be estopped from asserting *ultra vires*. In *Sykes v. Belk*, 278 N.C. 106, 179 S.E.2d 439, the issue was the effect of certain representations made by city officials regarding the location of a civic center to be funded by municipal bonds. We quoted from *May v. City of Kearney*, 145 Neb. 475, 17 N.W.2d 448 (1945), which applied the doctrine of estoppel against the municipality in a similar case. We concluded, however, that the facts in *Sykes* did not support the doctrine of estoppel. 278 N.C. at 122, 179 S.E.2d at 121-22. To the extent *Sykes* recognized that estoppel can be asserted against a municipality, it was in the context of a prejudicial misrepresentation by the municipality within its power to make and not in the context of a municipality exceeding the authority conferred upon it by the legislature.

Similarly, in *Pritchard v. Elizabeth City*, 81 N.C. App. 543, 554, 344 S.E.2d 821, 827, the Court of Appeals applied the doctrine of estoppel to prevent Elizabeth City from denying liability under an agreement with its firefighters regarding the accumulation of vacation leave. The city was estopped from asserting invalidity on the ground that the agreement violated a city ordinance. Indeed, the Court of Appeals concluded the agreement was authorized by the legislature and was not *ultra vires*. *Id.* at 552, 344 S.E.2d at 826. Thus, *Pritchard* did not involve estoppel to assert the doctrine of *ultra vires*.

"There is a clear distinction between the irregular or improper exercise of an existing power to contract and the entire absence of such power." 56 Am. Jur. 2d *Municipal Corporations* § 523. The city's action at issue here involves a lack of authority, not improperly exercised authority; therefore, the city is not estopped from asserting *ultra vires. Moody,* 271 N.C. at 388, 156 S.E.2d at 719.

Since the city had no authority to enter the agreement made between Spencer and plaintiffs, plaintiffs had no enforceable right to payments according to Spencer's representations. Thus plaintiffs' contract action fails. As plaintiffs never had a contractual right to receive payments in excess of those provided for in N.C.G.S. § 143-166.41, we likewise reject their claims based on an unconstitutional impairment of contract, an unconstitutional taking, and 42 U.S.C.§ 1983.

In conclusion, we hold that sections 143-166.41 & 143-166.42 of the General Statutes do not authorize municipalities to make separation allowances based on overtime pay, longevity pay, and accrued vacation, and plaintiffs may not invoke the doctrine of estoppel to prevent the city from asserting the defense of *ultra vires.*

The decision of the Court of Appeals is

REVERSED.