**STATE v. VESTAL**

[131 N.C. App. 756 (1998)]

STATE OF NORTH CAROLINA v. BRIAN KEITH VESTAL

No. COA97-554

(Filed 29 December 1998)

**1. Appeal and Error— dismissal of criminal charge—appeal by State—defendant's failure to raise double jeopardy—jurisdictional review**

Defendant's failure to assert the double jeopardy issue on appeal did not preclude the appellate court from reviewing whether the State was barred under N.C.G.S. § 15A-1445(a) from appealing an order dismissing a criminal charge against defendant because the rule against double jeopardy prohibits further prosecution of the case.

**2. Constitutional Law— double jeopardy—police misconduct—jury empaneled and sworn—sua sponte dismissal of charge**

The rule against double jeopardy bars a retrial of defendant on a charge of conspiracy to deliver marijuana where the trial court dismissed the charge with prejudice after a jury had been duly empaneled and sworn on the ground that the police department used in an undercover operation drugs which had been ordered destroyed in a prior case; defendant took no active role in the dismissal; and the trial court indicated that its primary concern was the effect its order would have on future police investigations.

Judge JOHN concurring.

Appeal by State of North Carolina from order filed 15 July 1996 by Judge Julius A. Rousseau, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 28 January 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Jill Ledford Cheek, for the State.*

*John Bryson for defendant-appellee.*

MARTIN, Mark D., Judge.

The State of North Carolina appeals from order dismissing with prejudice the case against defendant charged with conspiracy to deliver marijuana.

STATE v. VESTAL

[131 N.C. App. 756 (1998)]

At trial, after the jury had been empaneled and sworn, and subsequent to presentation of the State's case, the trial court, *sua sponte*, dismissed the case against defendant with prejudice on the ground that the High Point Police Department had "violat[ed] a trial court order without court approval," by using drugs in an undercover operation which had been forfeited in a prior case and were awaiting destruction.

As a preliminary matter, the State asserts the rule against double jeopardy, Fifth Amendment to the United States Constitution and the "law of the land" clause of Article I, § 19 of the North Carolina Constitution, does not bar the State, on appeal, from seeking reversal of the trial court's order of dismissal with prejudice. We disagree.

The right to appeal in a criminal proceeding is purely statutory. *Abney v. United States*, 431 U.S. 651, 656, 52 L. Ed. 2d 651, 658 (1977). The State may not appeal a judgment in favor of a criminal defendant in the absence of a statute "clearly conferring that right." *State v. Dobson*, 51 N.C. App. 445, 446, 276 S.E.2d 480, 481 (1981). Statutes authorizing appeal by the State in a criminal proceeding are "strictly construed" and "may not be enlarged" by this Court. *Id.* at 447, 276 S.E.2d at 482.

[1],[2] N.C. Gen. Stat. § 15A-1445(a) (1997) provides the State may appeal an order dismissing a criminal charge "[u]nless the rule against double jeopardy prohibits further prosecution." *State v. Priddy*, 115 N.C. App. 547, 550, 445 S.E.2d 610, 613, *disc. review denied*, 337 N.C. 805 (1994). Because the rule against double jeopardy precludes further prosecution in the present case, the State's appeal must be dismissed.[1]

The United States Supreme Court has articulated one aspect of the underlying rationale of the Double Jeopardy Clause of the United States Constitution as follows:

---

1. We note defendant's failure to assert the double jeopardy issue on appeal does not foreclose our review under section 15A-1445(a). It is well settled that the primary goal of statutory construction is to discern the intent of the legislature. *See, e.g., Bowers v. City of High Point*, 339 N.C. 413, 419, 451 S.E.2d 284, 289 (1994). The General Assembly enacted the North Carolina Criminal Procedure Act, which incorporates section 15A-1445(a), in 1977. At that time, a defendant was not required to plead double jeopardy as a bar until the State attempted to retry him. *See State v. Cutshall*, 278 N.C. 334, 343, 180 S.E.2d 745, 750 (1971), *appeal after remand*, 281 N.C. 588, 189 S.E.2d 176 (1972). As a result, we discern that the legislature did not intend to require a defendant, on appeal from an order of dismissal at the first trial, to assert the double jeopardy issue as a prerequisite to this Court's jurisdictional review under section 15A-1445(a). The language of section 15A-1445(a) reinforces this conclusion by

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*United States v. Green*, 355 U.S. 184, 187-188, 2 L. Ed. 2d 199, 204 (1957).

This salutory principle was later relied on in *United States v. Jenkins*, 420 U.S. 358, 43 L. Ed. 2d 250 (1975), *overruled by*, *United States v. Scott*, 437 U.S. 82, 57 L. Ed. 2d 65, *reh'g denied*, 439 U.S. 883, 58 L. Ed. 2d 197 (1978), where the Court held that a dismissal occurring at the stage of the proceeding after jeopardy had attached but prior to the factfinder's conclusion as to guilt or innocence, barred the State from appealing, as the appeal would require further proceedings leading to a factual resolution of the issue of guilt or innocence. *Id.* at 369-370, 43 L. Ed. 2d at 259.

In *Scott*, 437 U.S. 82, 57 L. Ed. 2d 65, the United States Supreme Court, overturning *Jenkins*, relaxed its application of this principle and stated that when a defendant takes an active role in the trial court's dismissal of the indictment, the State is not necessarily precluded from appealing the dismissal. In so holding, the Court concluded that:

the defendant, by *deliberately choosing to seek termination of the proceedings against him* on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant . . . . Rather, we conclude that the Double Jeopardy Clause, which guards against Governmental oppression, does not relieve a defendant from the consequences of his voluntary choice . . . .

. . . .

barring appeal by the State when "the rule against double jeopardy prohibits further prosecution." Accordingly, defendant's failure to assert the double jeopardy issue in brief does not relieve this Court of its plenary duty to determine whether a jurisdictional basis exists for the present appeal. *See Waters v. Personnel, Inc.*, 294 N.C. 200, 201, 240 S.E.2d 338, 340 (1978) ("If an appealing party has no right of appeal, an appellate court on its own motion should dismiss the appeal even though the question of appealability has not been raised by the parties themselves.").

. . . No interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant.

*Id.* at 99-100, 57 L. Ed. 2d at 79-80 (1978) (emphasis added).

In *State v. Priddy*, 115 N.C. App. 547, 445 S.E.2d 610, this Court followed the *Scott* reasoning and rejected defendant's argument that the rule against double jeopardy precluded his re-trial for habitual driving while impaired. In that case, the trial court dismissed the charge, upon defendant's motion, on the ground that it had no jurisdiction—a matter "entirely unrelated to the sufficiency of evidence as to any element of the offense or to defendant's guilt or innocence." *Id.* at 551, 445 S.E.2d at 613.

*Scott* and *Priddy* mandate the rule against double jeopardy will not bar an appeal by the government where the defendant took an active role in the dismissal, because defendant essentially chose to end the trial and cannot later complain that he was "deprived of his 'valued right to have his trial completed by a particular tribunal.' " *Scott*, 437 U.S. at 99-100, 57 L. Ed. 2d at 80 (*quoting United States v. Jorn*, 400 U.S. 470, 484, 27 L. Ed. 2d 543, 556 (1971)); *State v. Priddy*, 115 N.C. App. at 551, 445 S.E.2d at 613. Put simply, the Double Jeopardy Clause "does not relieve a defendant from the consequences of his voluntary choice." *Scott*, 437 U.S. at 99, 57 L. Ed. 2d at 79.

In *United States v. Dahlstrum*, 655 F.2d 971 (9th Cir. 1981), *cert. denied*, 455 U.S. 928, 71 L. Ed. 2d 472 (1982), the government appealed from the trial court's dismissal of an indictment on grounds apart from guilt or innocence. *Id.* at 973. During presentation of the government's case, the trial court became concerned that a government agency had abused its power. *Id.* When the government called a witness in an attempt to eliminate the trial court's concern, the court grew increasingly disturbed and ordered another witness to appear to help explain the agency's practices and procedures. *Id.* On the basis of this testimony, the trial court orally dismissed the indictment against the defendant because of "governmental misconduct." *Id.* In dismissing the appeal, the 9th Circuit stated

[t]he record convinces us that the judge took complete control of the proceedings and set off on a course over which [defendant] had practically no control. Nowhere does it appear that the judge, prior to the oral dismissal of the indictment, even consulted

[defendant] on what course of action to take. For that matter, the judge's words and actions indicated that his primary concern was not with the case before him, but with the effect of his actions on future IRS investigations. The entire record indicates that the judge had no interest in completing the trial. [Defendant's] involvement in the termination of the trial was at best minimal and in no way reached the high degree of participation that was present in *Scott*. Nor can it be said that [defendant] retained "primary control" over the course of the trial. For that matter, the record shows that he had no control over what was occurring. . . . His relatively passive role should not be taken to reflect anything beyond a keen appreciation of the fact that the judge had taken over the proceedings.

*Id.* at 975. (citations omitted).

In the instant case, it is undisputed that jeopardy had attached because the trial court dismissed the charge against defendant "with prejudice" after a competent jury had been duly empaneled and sworn. *See State v. Cutshall*, 278 N.C. at 344, 180 S.E.2d at 751 ("Jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) on a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn."). It is also undisputed that the trial judge, *sua sponte*, instigated the dismissal and took complete control of the proceeding, indicating his primary concern was the effect his order would have on future police investigations.

Unlike *Scott* and this Court's decision in *Priddy*, defendant here did not take an active role in the process which led to dismissal of the charge against him. Rather, due to the trial court's *sua sponte* dismissal of this case, defendant was involuntarily deprived of his constitutional right to have his trial completed by the jury which had been duly empaneled and sworn. *Cf. United States v. Jorn*, 400 U.S. at 484, 27 L. Ed. 2d at 556. As such, the rule against double jeopardy bars further prosecution of defendant on the charge set forth in the indictment. *See State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986) (Double Jeopardy Clause protects against "second prosecution for the same offense after acquittal").

Because the rule against double jeopardy deprives this Court of any jurisdictional basis under section 15A-1445(a) to hear the present appeal, it must be dismissed.

STATE v. VESTAL

[131 N.C. App. 756 (1998)]

Dismissed.

Judge GREENE concurs.

Judge JOHN concurs with separate opinion.

Judge JOHN concurring with separate opinion.

I concur in the majority opinion. However, I write separately to address the issue asserted by the State on appeal, *i.e.* that the trial court lacked authority to enter the challenged dismissal. In order to evaluate the trial court's action in an accurate context, it is necessary to review the circumstances *sub judice* in some detail.

The State in its appellate brief attempts at great length to minimize the confusing and inconsistent versions given the trial court of the history of the drugs involved in the case against defendant. At trial, the State presented evidence that the marijuana which was the subject of defendant's conspiracy charge had been checked out of the High Point Police Department Evidence Room (Evidence Room), having been previously seized in an unrelated concluded case. Upon the trial court's inquiry in the absence of the jury following presentation of the evidence and the charge conference, the prosecutor stated the marijuana had been confiscated in the case of *State v. Emmett James Hagy and Donna Anderson Hagy*, which originated in 1993. The clerk informed the court that her records indicated the Hagy case had been tried 6 July 1993 and that "there was an order to destroy in that case." Prior to an overnight recess, the court directed the prosecutor to "make some investigation and see what [he could] find out" regarding why the marijuana "had been sitting over there two years" prior to being used in the instant case and why

> these law officers [were] taking contraband out to use it at their will and disposal without a court order.

Defendant's trial was conducted during the 24 June 1996 term of Guilford County Superior Court, High Point Division, the offense with which he was charged allegedly having occurred 17 May 1995.

Seeking to respond to the trial court's inquiry the next morning, the State called several witnesses, including the investigating officers and employees of the Evidence Room. Although four pounds of marijuana previously ordered destroyed in the Hagy cases at first could not be accounted for, it subsequently developed that sixty-seven (67)

plants had been ordered destroyed in the Hagy cases and that Evidence Room records indicated five-hundred (500) grams had been received as evidence in the instant case. The court thereupon observed, "[w]ell, it doesn't sound to me like the 500 grams is the same as 67 plants."

After further discussion and delay, the lead investigating officer in the current case, Detective Herbert Norris Sampson, Jr. (Sampson), testified he had "been trying to go back and piece together exactly what [had] happened with respect to this marijuana." Sampson stated he had initially checked out the sixty-seven plants from the Hagy cases on 17 May 1995, but now recalled he had concluded they were unsuitable for the instant undercover investigation. He subsequently had locked them "in our evidence locker," and returned them to the Evidence Room the next day. Sampson indicated he had mistakenly given the prosecutor the wrong case name asserted the previous day to the court. He acknowledged that his testimony "involving 67 plants . . . was an error on [his] part," and that the five-hundred grams of marijuana in the instant case actually came from an unrelated case initiated by a Detective Ferrell, which case Sampson was unable to identify, except by High Point Police Department number.

Following Sampson's testimony, the trial court announced its decision to dismiss the case against defendant

> [f]or improper conduct on the police department, taking drugs out when they had no authorization for it. The drugs were to be destroyed.
>
> Now, it's possible you could have gotten a court order maybe to have used it, but there is no court order; you [the prosecution] don't pretend to have one.
>
> The officers here are just taking drugs out any time they want to, from one file to another and don't keep it straight . . . . I don't think it's right.

The court thereupon called in and excused the jury, explaining the circumstances leading to dismissal of the case. After a recess, the court permitted the prosecutor to present "additional evidence."

Tom Petty (Petty), property evidence clerk of the Evidence Room, and Sampson were recalled. Ultimately, it was determined the marijuana used in the instant case came from the case of *State v.*

*James Henry Canter, Jr.*, which originated in 1993. Evidence Room records indicated numerous items of contraband had been seized in that case, including five pounds of marijuana. Petty testified that an entry in the records dated 18 May 1995 read, "[a]ll items to be destroyed except 500.8 grams of marijuana," which, according to the employee, "was used—to be used in a drug deal and logged in under a new . . . number." The entry resulted, Petty continued, because "the case was over and Officer Ferrell said to destroy those items," except the 500.8 grams.

Sampson related that his "authority to use drugs from another case" resulted from a

> call [to] the D.A. who then approved it to me who [sic] I then ran it back through my lieutenant who then said go with it.

Sampson concluded his testimony by acknowledging that he was unaware of the disposition of the Canter case, and that he "just knew from Detective Ferrell that [the marijuana] was no longer needed."

While the court judgment in the Canter case is not contained in the record on appeal, that judgment is referenced in the portion of the proceedings during which the State was permitted to introduce additional evidence. The Canter judgment appears to have been entered 4 April 1994, more than a year prior to the alleged date of defendant's offense, and to have directed that "all contraband is destroyed and monies taken are forfeited." A subsequent "form order" in the Canter case, likewise not in the record but referenced in same portion of the transcript, apparently provided that the contraband seized in that case be "forfeited and disposed of according to law." No evidence was introduced that either law enforcement officers or prosecutors had sought modification by the trial court of the orders entered in the Hagy and Canter cases.

At the conclusion of the State's presentation of additional evidence, the trial court reiterated its decision to dismiss the charges against defendant, commenting as follows:

> . . . I don't think it's right to take drugs that have been ordered forfeited and destroyed and let the officers use them at their nilly-willy.
>
> . . . .
>
> If officers and the court system itself can't abide by what's right and decent and abide by our rules and what our procedure

has been, we can't expect drug dealers or anybody else to even attempt to.

. . . .

The trial court thereupon dictated a formal order dismissing the charges against defendant with prejudice, finding as fact, *inter alia,*

that the officer had no authority to take the marijuana out of the police department after once it's been ordered forfeited without some further court order, and there being none in this case.

The court concluded "that justice require[s] that this case be dismissed as a deterrent to the police department to further activities."

Assuming *arguendo* that the State correctly asserts that the trial court did not act pursuant to statutory authority in dismissing the case against defendant, it is nonetheless well established that, in addition to statutorily denominated powers, the court possesses inherent powers "irrespective of constitutional provisions," *Beard v. N.C. State Bar,* 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987), which "power[s] may not be abridged by the legislature." *Id.; see also* N.C.G.S. § 84-36 (1995).

Inherent power is essential to the existence of the court and the order and efficient exercise of the administration of justice. Through its inherent power the court has authority to do all things that are reasonably necessary for the proper administration of justice.

*Beard,* 320 N.C. at 129, 357 S.E.2d at 696.

Moreover,

[t]he paramount duty of a trial judge is to control the course of a trial so as to prevent injustice to any party. In the exercise of this duty he possesses broad discretionary powers.

*State v. Britt,* 285 N.C. 256, 271-72, 204 S.E.2d 817, 828 (1974).

Against the backdrop of uncontroverted evidence of substantial delay in complying with court ordered destruction of contraband, a delay of nearly two years in the Hagy cases and of thirteen months in the Canter case, of at best incomplete and confused recordkeeping and management of confiscated controlled substances, and of apparent prosecutorial and supervisory police approval of modification of prior court orders without seeking authorization from the court, I

believe the trial court "reasonably" and in the interests of "the proper administration of justice," *Beard*, 320 N.C. at 129, 357 S.E.2d at 696, properly dismissed the case against defendant as, in the court's word, a "deterrent" to future similar conduct. *See State v. Ward*, 31 N.C. App. 104, 107, 228 S.E.2d 490, 492 (1976) (trial court possessed "inherent authority" to dismiss proceeding pursuant to N.C.G.S. § 20-223 to have defendant declared an "habitual offender" of the traffic laws, upon prosecutor's failure to institute action "forthwith" as required by the statute). Were the instant appeal properly before us, therefore, I would vote to reject the State's argument that "the trial court [lacked] authority to dismiss the State's case against defendant on the grounds forming the basis for dismissal in the present case."