MARK D. MYERS, Plaintiff/Appellant v. TOWN OF PLYMOUTH, Defendant/Appellee

No. COA99-79

(Filed 7 December 1999)

**1. Cities and Towns— town manager employment contract— at will employee—severance package—town retains right to fire manager at its pleasure**

A town manager's employment contract requiring a lump sum payment for a severance package did not violate the statutory "at will" employment mandate under N.C.G.S. § 160A-147 since the statute mandates only that the town retains the right to fire its manager "at its pleasure," and the pertinent contract explicitly gave the Town of Plymouth that right at any time for any reason.

**2. Cities and Towns— town manager employment contract— at will employee—severance package—not ultra vires**

A town manager's employment contract requiring a lump sum payment for a severance package was not ultra vires since: (1) N.C.G.S. § 160A-4 gives municipalities supplementary powers to carry out their enumerated powers; (2) the town's relationships with its five previous managers reveals the contract in question was a legitimate way for the town council to employ a town manager while providing the manager with the financial security to accept the employment; (3) the town did not violate or improperly interpret a clearly articulated statute; and (4) the town may still present evidence at trial that the town manager did not live up to the terms of the severance provision under his contract if he engaged in felonious criminal conduct or failed to cure his performance after the town gave him notice of deficiency.

**3. Cities and Towns— town manager employment contract— lack of pre-audit certificate—no obligation incurred during fiscal year**

The trial court did not err in finding a town manager's employment contract was valid despite its lack of a pre-audit certificate required by N.C.G.S. § 159-28(a) because: (1) the town did not incur an obligation to pay the severance package during the fiscal year in which the contract was authorized; and (2) the mere possibility of an expense in the first year does not invalidate the contract when the first year never in fact resulted in an obligation.

MYERS v. TOWN OF PLYMOUTH

[135 N.C. App. 707 (1999)]

Appeal by plaintiff from judgment entered 29 October 1998 by Judge W. Russell Duke, Jr. in Superior Court, Washington County. Heard in the Court of Appeals 21 October 1999.

*The Brough Law Firm, by Michael B. Brough, for plaintiff.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patricia L. Holland and Gregory W. Brown, and Rodman, Holscher, Francisco & Peck, by David C. Francisco, for defendant.*

WYNN, Judge.

Under N.C. Gen. Stat. § 160A-147 (1998 Cum. Supp.), municipalities may only hire their town managers in an "at will" capacity. In this case, a fired town manager contends that a provision for severance pay under his employment contract did not negate the "at will" nature of his employment. Since we find an agreement providing severance pay to a town manager does not prohibit the town from terminating the town manager "at will," we conclude that the severance pay provision is valid and enforceable.

N.C. Gen. Stat. § 159-28(a) (1994) requires that a town pre-audit any financial obligation that will come due in the year the town incurs the obligation. The Town in this case argues that its employment contract with the town's manager is invalid because the contract lacks a pre-audit certificate. Because we find that the obligation incurred by the Town did not result in a financial obligation in the year in which the contract was signed, we uphold the trial court's finding that the lack of a pre-audit certificate did not invalidate the Town's employment contract with its town manager.

In December 1996, the Town of Plymouth through its town council offered Mark D. Myers the position of town manager at a salary of $50,000 per year. Mr. Myers accepted the job and began work on 2 January 1997. At that time, Mr. Myers did not have a written employment contract with the Town but he wanted to obtain one before moving his family and establishing a long-term residence in Plymouth. He worried about his job's stability because of the Town's recent history regarding its managers. (From 1991 to 1996, Plymouth employed five different people to serve as town manager or interim town manager. One of the fired managers sued the Town, eventually settling the action for $60,000.)

At the town council's regular monthly meeting of 10 March 1997, Mr. Myers presented a proposed written employment contract. The

**MYERS v. TOWN OF PLYMOUTH**

[135 N.C. App. 707 (1999)]

town council instructed him to meet with the town attorney and present a revised contract. At the next meeting on 14 April 1997, the town council voted 4-2 to enter into the employment contract and severance agreement.

Under the terms of the contract, Mr. Myers agreed to work for the Town of Plymouth for four years. He reserved the right to terminate his employment upon 30 days' notice. The Town of Plymouth also reserved the right to terminate Mr. Myers' employment after 30 days' notice and to relieve him of his duties at any time. Furthermore, the contract provided Mr. Myers with a severance package to be paid upon his termination by the Town for any reason except felonious criminal conduct or a failure of performance which he failed to cure after appropriate notice. The severance package provided for a lump-sum payment of (1) the monetary equivalent of his accrued vacation and leave time, (2) any unreimbursed expenses, and (3) his regular salary and benefits for the duration of the contract period.

Relying on the contract and its severance provisions, Mr. Myers moved his family to Plymouth and entered into a 27-month housing lease.

On 12 December 1997, a new town council was seated. One seat was filled by appointment, replacing a council member who resigned. After the appointment, only one council member who had voted in favor of Mr. Myers' employment contract remained on the council. Mr. Myers' relationship with the new council deteriorated, and on 13 April 1998, the council voted to dismiss him from his position as town manager, effective immediately. However, the council refused to pay to him any of the compensation required by the severance package.

In response, Mr. Myers brought this action against the Town of Plymouth seeking first, a declaratory judgment that the contract was valid and enforceable and second, that the Town of Plymouth had breached the contract. After considering the pleadings, affidavits and arguments of counsel, the trial court found that the contract was valid despite its lack of a pre-audit certificate required by N.C. Gen. Stat. § 159-28(a). However, the trial court found that the severance agreement violated N.C. Gen. Stat. § 160A-147 which dictates that town managers must serve at the pleasure of the town, and therefore, the contract was not valid. From the grant of summary judgment in favor of the Town of Plymouth, Mr. Myers appealed.

I.

[1] Mr. Myers argues that the Town of Plymouth had the authority to enter into the employment contract and that the severance agreement did not violate the statutory "at will" employment mandate. We agree.

Under N.C. Gen. Stat. § 160A-147, our Legislature limited the hiring of town managers to serve "at the pleasure" of municipalities.

> In cities whose charters provide for the council-manager form of government, the council shall appoint a city manager to serve *at its pleasure.*

N.C. Gen. Stat. § 160A-147. (Emphasis added.) We, like the 4th Circuit U.S. Court of Appeals in *Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997), *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 869 (1998), hold that when an employee serves "at the pleasure" of an employer, an "at will" relationship exists.

The Town of Plymouth argues that the employment contract went far beyond an "at will" relationship and is therefore invalid under N.C. Gen. Stat. § 160A-147. However, the statute mandates only that the town retains the right to fire its manager "at its pleasure."

In the case at bar, the contract in question explicitly gave the Town of Plymouth the right to fire Mr. Myers at any time for any reason. The contract did not prevent the Town from exercising its power, as is evidenced by the fact that it fired Mr. Myers.

At most, the severance package may have deterred the Town from exercising its right to fire Mr. Myers since the lump-sum payment may have acted as a disincentive to firing. But that disincentive did not prohibit the Town from terminating Mr. Meyers "at its pleasure." It follows that Plymouth's severance agreement did not violate the "at will" mandate under N.C. Gen. Stat. § 160A-147.

[2] Notwithstanding our finding that the Town's employment contract did not violate N.C. Gen. Stat. § 160A-147, the Town of Plymouth strenuously argues that the execution of the employment contract was *ultra vires*—beyond the power given to the Town by the Legislature—and is therefore unenforceable.[1] We disagree.

---

1. Although Mr. Myers does not assert that the Town of Plymouth is estopped from arguing that the employment contract was *ultra vires,* we believe it is prudent to note this aspect of this case. Our Supreme Court has repeatedly held that a municipality cannot be estopped from defending a contract action on the basis of *ultra vires,*

Municipalities may only exercise that power given to them by the Legislature. Acts or agreements which are beyond the powers of a municipality are invalid and unenforceable. *See Bowers v. City of High Point,* 339 N.C. 413, 451 S.E.2d 284 (1994). However, the Legislature gives municipalities broad discretion in executing those powers explicitly conferred.

The policy underlying N.C. Gen. Stat. § 160A-4 (1994) provides that municipalities should have adequate authority to execute the powers, duties, privileges and immunities conferred upon them by law.

> To this end, the provisions of this Chapter and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect . . . .

N.C. Gen. Stat. § 160A-4. By law, municipalities have the power to enter into contracts (N.C. Gen. Stat. § 160A-11 (1994)), to hire city managers (N.C. Gen. Stat. § 160A-147), and to establish employees' compensation (N.C. Gen. Stat. § 160A-162 (1994)).

Since N.C. Gen. Stat. § 160A-4 gives municipalities supplementary powers to carry out their enumerated powers, we find that the contract in this case was not *ultra vires.* The contract in this case employed a town manager, setting forth the particulars of his compensation. Each aspect of the contract in question was explicitly allowed by the Legislature. Moreover, given the history of the Town of Plymouth's relationships with its five previous managers, the contract in question was a legitimate way for the Town of Plymouth to employ a town manager while providing the manager with the financial security to accept the employment.

The Town of Plymouth relies on *Bowers, supra,* in its argument that Mr. Myers' employment contract was *ultra vires.* However, the facts of that case are distinguishable from the case at bar.

In *Bowers,* our Supreme Court addressed the question of whether contracts entered into by a town based on the town's interpretation

---

despite the fact that the town may have already benefitted from the contract. *See, e.g., Bowers v. City of High Point,* 339 N.C. 413, 424, 451 S.E.2d 284, 292 (1994); *Raleigh v. Fisher,* 232 N.C. 629, 635, 61 S.E.2d 897, 902 (1950); *Jenkins v. Henderson,* 214 N.C. 244, 248, 199 S.E. 37, 40 (1938); *Watauga County Bd. of Educ. v. Town of Boone,* 106 N.C. App. 270, 276-77, 416 S.E.2d 411, 415 (1992).

of a statute were *ultra vires*. The statute in question provided specific guidelines to determine separation allowances for retiring police officers. The City of High Point took it upon itself to define the separation allowances contrary to the plain language of the statute. The statute in that case was clear on its face, and the City exceeded its powers by enforcing it in a way contrary to its plain meaning.

In the case at bar, we have already determined that Plymouth did not violate or improperly interpret a clearly articulated statute. Therefore, the Town's reliance on *Bowers* to show that Mr. Myers' contract was *ultra vires* is unpersuasive.

We note in passing that the parties do not address the constitutionality of the subject contract. In *Lette v. County of Warren*, 341 N.C. 116, 462 S.E.2d 476 (1995), our Supreme Court found a county's severance pay expenditure invalid under Article I, Section 32 of the North Carolina Constitution which states:

> No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services.

In *dicta*, the Supreme Court appears not to have placed an outright ban on severance payments; instead, the Court limited its holding to the facts of that case by noting that the retiring manager did not have a written contract with the county calling for such a payment, but was instead receiving a gift.

> The wisdom of prohibiting such additional compensation for a public servant official upon his voluntary resignation, *absent a contract stating otherwise*, is grounded in the interest of good government and founded on sound reasons of public policy.

*Id.* at 123, 462 S.E.2d at 480 (Emphasis added). Thus while it appears that our Supreme Court left open the possibility that a written contract which required a severance payment *could* be enforceable, despite the language of Art. I, § 32, the parties did not present that issue to us and we will therefore refrain from further addressing that question in this opinion.

We further note that the severance package in this case does not create an automatic right to payment for Mr. Myers. The contract provides that if the town manager engaged in felonious criminal conduct or failed to cure his performance after notice of deficiency by the

Town, then the Town of Plymouth was not obligated to pay the severance package. Thus, the Town of Plymouth may still present evidence at trial to show that Mr. Myers did not live up to the terms of the severance provision under his contract.

II.

**[3]** The Town of Plymouth also argues that the trial court erred when it found that the employment contract was valid despite its lack of a pre-audit certificate required by N.C. Gen. Stat. § 159-28(a). We disagree.

N.C. Gen. Stat. § 159-28(a) reads, in pertinent part,

(a) Incurring Obligations.—No obligation may be incurred in a program, function, or activity accounted for in a fund included in the budget ordinance unless the budget ordinance includes an appropriation authorizing the obligation and an unencumbered balance remains in the appropriation sufficient to pay in the current fiscal year the sums obligated by the transaction for the current fiscal year . . . . If an obligation is evidenced by a contract or agreement requiring the payment of money or by a purchase order for supplies and materials, the contract, agreement, or purchase order shall include on its face a certificate stating that the instrument has been preaudited to assure compliance with this subsection . . . .

Furthermore, an "obligation incurred in violation of this subsection is invalid and may not be enforced. The finance officer shall establish procedures to assure compliance with this subsection." N.C. Gen. Stat. § 159-28(a). The purpose of the pre-audit certificate is to ensure that a town has enough funds in its budget to pay its financial obligations.

The language of the statute makes the pre-audit certificate a *requirement* when a town will have to satisfy an obligation in the fiscal year in which a contract is formed. Our case law supports the position that a contract for payment that has not been pre-audited is invalid and unenforceable. *See L & S Leasing, Inc. v. City of Winston-Salem*, 122 N.C. App. 619, 622, 471 S.E.2d 118, 121 (1996); *Watauga County Bd. of Educ. v. Town of Boone*, 106 N.C. App. 270, 276, 416 S.E.2d 411, 415 (1992); *Cincinnati Thermal Spray Inc. v. Pender County*, 101 N.C. App. 405, 408, 399 S.E.2d 758, 759 (1991).

**MYERS v. TOWN OF PLYMOUTH**

[135 N.C. App. 707 (1999)]

However, § 159-28(a) provides no guidance as to whether a pre-audit certificate is required for obligations that will come due in future years. Neither this nor any other section requires that a town's financial officer pre-audit a long-term contract each year the contract is in effect.[2] Therefore, a contract that is signed in one year but results in a financial obligation in a later year will not violate § 159-28(a).

In the case at bar, the Town of Plymouth did not incur an obligation to pay the severance package during the fiscal year in which the contract was authorized. The fiscal year in question ended only two months after the Town and Mr. Myers signed the contract. Presumably, neither Mr. Myers nor the Town of Plymouth thought that Mr. Myers would be fired within a mere two months after the contract was signed, and indeed he was not fired within that time. We recognize that the improbability of termination did not mean that termination was *impossible* during that two-month period. However, we will not invalidate the contract due to its lack of a pre-audit certificate when the mere *possibility* of an expense in the first year never in fact resulted in an obligation.

In conclusion, summary judgment is proper when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56(c) (1990). Since Mr. Myers' employment contract was valid and enforceable, the trial court erred in granting summary judgment in favor of the Town of Plymouth.

Reversed in part; affirmed in part.

Judges HORTON and EDMUNDS concur.

---

2. We note the existence of N.C. Gen. Stat. § 159-13 (1994), which governs "contingency appropriations"—i.e., obligations that may or may not come due during a fiscal year. Although the statute requires that such a contingency be treated as a financial obligation in the year in which it is approved, the statute does not offer guidance as to whether a long-term contingency appropriation requires a pre-audit certificate should it come due in a future year. In any case, the parties in their briefs did not address § 159-13, so we withhold comment on its application to the case at bar.