**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 13-1820**

---

BRETT DAVIS; BRIAN CHRIS SMOOT; STEVE SZYMECZEK,

Plaintiffs - Appellees,

v.

CITY OF GREENSBORO, NORTH CAROLINA,

Defendant - Appellant.

---

**No. 13-1825**

---

WENDY CHEEK; BRIAN KEITH COLLINS; JOSEPH CASEY COUNCILMAN; WALTER STEVEN COUTURIER; TIMOTHY FIELDS; WILLIAM C. MORGAN,

Plaintiffs - Appellees,

v.

CITY OF GREENSBORO, NORTH CAROLINA,

Defendant - Appellant.

---

**No. 13-1826**

---

DAVID MORGAN; ROGERS REYNOLDS,

Plaintiffs - Appellees,

v.

CITY OF GREENSBORO, NORTH CAROLINA,

                    Defendant - Appellant.

                    ─────────────

                    **No. 13-1827**
                    ─────────────

MICHAEL BROWNELL; TRAYVEAWN GOODWIN; CHRISTIAN HICKS; TY
JENKS; PATRICK KENNEDY; GEORGE SIMMONS,

                    Plaintiffs - Appellees,

        v.

CITY OF GREENSBORO, NORTH CAROLINA,

                    Defendant - Appellant.


                    ─────────────

Appeals from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Catherine C. Eagles,
District Judge.   (1:12-cv-00888-CCE-JEP;  1:12-cv-00981-CCE-JEP;
1:12-cv-01110-CCE-JEP; 1:12-cv-01311-CCE-JEP)

                    ─────────────

Argued:  September 16, 2014        Decided:  October 22, 2014

                    ─────────────

Before MOTZ and KING, Circuit Judges, and DAVIS, Senior Circuit
Judge.

                    ─────────────

Affirmed by published opinion.  Judge Motz wrote the opinion, in
which Judge King and Senior Judge Davis joined.

                    ─────────────

**ARGUED**: Kenneth Kyre, Jr., PINTO, COATES, KYRE & BROWN, PLLC,
Greensboro, North Carolina, for Appellant.   Torin L. Fury,
FRAZIER HILL & FURY, RLLP, Greensboro, North Carolina, for
Appellees.   **ON BRIEF**: William L. Hill, James Demarest Secor,
III, FRAZIER HILL & FURY, RLLP, Greensboro, North Carolina, for
Appellees.

                    ─────────────

DIANA GRIBBON MOTZ, Circuit Judge:

The City of Greensboro appeals the denial of motions to dismiss, arguing that the district court erred in rejecting the City's claims of governmental immunity. Before we can review the district court's judgments, we must resolve the threshold question of whether we have jurisdiction over the interlocutory orders in these consolidated appeals. For the reasons that follow, we conclude that we do have jurisdiction, and we affirm the judgments of the district court.

I.

Four groups of current and retired Greensboro police officers and firefighters (collectively, "the Officers") brought separate suits against the City, alleging violations of state and federal law. Broadly speaking, the Officers' claims relate to the City's alleged failure to pay its employees certain wages and benefits.

The only benefit at issue in these appeals is the City's "longevity payment program." As recounted in the Officers' complaints, the City provides annual lump-sum payments to police officers and firefighters based on the number of years they have worked for the City. Employees hired prior to July 1, 1994, who completed twenty years of service by June 30, 2010, were grandfathered into a previous longevity payment program. For

3

other employees, the longevity payments began after five years of service and increased with each additional five years on the job. The Officers allege that the longevity payments are "an integral part" of their employment contracts with the City, and that the City lists the payments as a "benefit" in its Employee Handbook.

According to the complaints, the City began to modify the longevity payment program in 2010. First, the officers allege, the City capped the payments for certain employees at a lower percentage of their annual salary. Two years later, it converted the longevity payments for some employees into a discretionary bonus program. These changes lowered the amount some of the Officers were entitled to receive. The Officers also allege that the City failed to include longevity pay in calculating their base rate of pay. This inaccuracy assertedly led to underpayment of overtime wages, which in turn resulted in inadequate contributions to the Officers' retirement funds.

In addition to the many other causes of action in each complaint, the Officers allege that the City breached a contract for longevity pay.[1] Some of the Officers also claim that they

---

[1] Two groups of Officers now disclaim any intention to allege breach of contract claims regarding longevity payments. To the extent they no longer pursue breach of contract claims, the disposition of these appeals will not affect their ongoing litigation.

4

are entitled to the longevity payments under the doctrines of equitable and quasi estoppel.

The City moved to dismiss every cause of action in all four complaints. In response to the breach of contract and estoppel claims, the City argued that governmental immunity protected it from suit. Although a municipality in North Carolina waives governmental immunity when it enters into a valid contract, the City claimed that the Officers failed to adequately allege the existence of valid contracts for longevity pay.

The district court granted in part and denied in part the City's motions to dismiss. Most of the Officers' claims survived the motions, including the only claims at issue in this appeal -- the Officers' breach of contract and estoppel claims, to which the City contends it enjoys governmental immunity from suit. The district court held that the Officers "sufficiently alleged a contractual longevity payment obligation." Davis v. City of Greensboro, N.C., 2013 WL 2317730, at *3 (M.D.N.C. May 28, 2013). After noting that any further evaluation of the City's immunity defense was "inappropriate for resolution" because of the "highly fact-specific" nature of the inquiry necessary to resolve the immunity issue, the district court denied the City's motions to dismiss the Officers' contract and estoppel claims. Id. at *2-3.

The City timely noted an appeal of this portion of the district court's order in all four cases. We have consolidated the cases for our review.

## II.

Before we can address the City's governmental immunity defense, we must first determine whether we have jurisdiction over these appeals.

Federal law, specifically 28 U.S.C. § 1291 (2012), limits our jurisdiction to appeals from "final decisions of the district courts." Generally, the denial of a motion to dismiss does not constitute a "final decision," and thus does not provide the proper basis for an appeal. See Johnson v. Jones, 515 U.S. 304, 309 (1995). But the collateral order doctrine extends our jurisdiction to a "'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106 (2009) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). This small class "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 42 (1995); see also Cobra Natural Res., LLC v. Fed.

<u>Mine Safety & Health Review Comm'n</u>, 742 F.3d 82, 86 (4th Cir. 2014).

The Supreme Court has held that orders denying certain kinds of immunity fall within the collateral order doctrine.  In so doing, the Court has exercised jurisdiction over interlocutory appeals of orders rejecting defenses of absolute immunity, <u>Nixon v. Fitzgerald</u>, 457 U.S. 731, 742 (1982), qualified immunity, <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985), and a state's claim of sovereign immunity, <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 147 (1993).  We have similarly exercised jurisdiction over an interlocutory appeal of an order rejecting the kind of immunity at issue here, a municipality's claim of governmental immunity. <u>Gray-Hopkins v. Prince George's Cnty.</u>, 309 F.3d 224, 231–32 (4th Cir. 2002).

Only a claimed "<u>immunity from suit</u>," not "a mere defense to liability," can provide the proper basis for an interlocutory appeal.  <u>Mitchell</u>, 472 U.S. at 526 (emphasis in original).  To determine whether a municipality's claim of governmental immunity constitutes an immunity from suit, we "must look to substantive state law."  <u>Gray-Hopkins</u>, 309 F.3d at 231.

Here, the scope of governmental immunity under North Carolina law is clear.  The Supreme Court of North Carolina has held that governmental immunity provides a "complete defense"

7

that "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 354 (N.C. 2009). As such, governmental immunity in North Carolina constitutes "an immunity from suit rather than a mere defense to liability." Id. (emphasis in original) (quoting Mitchell, 472 U.S. at 526) (internal quotation mark omitted).

Even when a defendant claims an immunity from suit, however, certain orders denying immunity do not provide a proper basis for interlocutory appeal under the collateral order doctrine. A district court's denial of immunity constitutes "an appealable 'final decision'" only "to the extent that it turns on an issue of law." Mitchell, 472 U.S. at 530. In Ashcroft v. Iqbal, the Court clarified that a ruling on the sufficiency of the pleadings at the motion-to-dismiss stage does turn on such "an issue of law." 556 U.S. 662, 672 (2009). As the Court explained, that holding is consistent with the "well established" rule that "a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." Id.

Thus, here the challenged district court order turned on an issue of law. The governmental immunity claim the City raised in its motions to dismiss rested on the argument that the

8

Officers had not adequately alleged valid contracts for longevity pay. The district court denied the City's motions to dismiss and ruled on the sufficiency of the pleadings, holding that the Officers "sufficiently alleged a contractual longevity payment obligation." Davis, 2013 WL 2317730, at *3. Accordingly, the district court's orders rejecting the City's governmental immunity defense constitute final orders subject to interlocutory review under the collateral order doctrine.

We note that the district court's comment that "[t]he immunity defense is . . . inappropriate for resolution at this stage," id., does not defeat our jurisdiction. To be sure, we recently cautioned that "if a court or agency expressly holds open the possibility of reconsideration, a collateral order appeal should not be authorized." Cobra Natural Res., LLC, 742 F.3d at 88. But here the district court flatly denied the City's motions to dismiss. The court did not "expressly," or even implicitly, "hold[] open" the question of the sufficiency of the factual allegations in the Officers' complaints.

The district court did indicate an interest in the subsequent "development of the facts." Davis, 2013 WL 2317730, at *2. But such further factual development, while certainly helpful to the district court's eventual decision about whether the Officers actually had valid contracts for longevity pay, does not affect the legal conclusion that the Officers

9

adequately pled the existence of such contracts and so their claims survived a motion to dismiss.

Indeed, our precedent confirms that jurisdiction over the district court's orders here is proper. In Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc), we exercised jurisdiction over an interlocutory appeal when the defendant raised a qualified immunity defense in his motion to dismiss, even though the district court expressly did not resolve the immunity question. The district court denied the defendant's motion to dismiss, citing concerns about "factual issues" in declining to rule on the qualified immunity defense. See Jenkins v. Medford, 1995 WL 914528, at *5 (W.D.N.C. Apr. 18, 1996). We held that despite the court's failure to rule on the defense, the order was immediately appealable because the court's "refusal to consider the question subjected [the defendant] to further pretrial procedures, and so effectively denied him qualified immunity." Jenkins, 119 F.3d at 1159. Here, as in Jenkins, delaying consideration of the immunity question risks "subject[ing] the [City] to the burdens of pretrial matters, and some of the rights inherent in a [governmental] immunity defense [would be] lost." Id. We are therefore satisfied that we have jurisdiction over the City's interlocutory appeals.

10

III.

Having concluded that we have jurisdiction, we turn to the City's contention that governmental immunity provides it with immunity from the Officers' breach of contract and estoppel claims.

All parties agree that, if there are valid contracts between the City and the Officers for longevity pay, the City cannot prevail on its governmental immunity defense. The City offers two arguments as to why the Officers have not alleged valid contract and estoppel claims. First, the City contends that the Officers were required, and failed, to allege the existence of preaudit certificates. Appellant Br. (Davis case) 10-19. Second, the City claims that the Officers were required, and failed, to allege that their contracts were written. Id. at 19-20. Both arguments are meritless.

A.

In North Carolina, certain contracts with governmental entities must include a "preaudit certificate." See N.C. Gen. Stat. § 159-28(a) ("If an obligation is evidenced by a contract . . . the contract . . . shall include on its face a certificate stating that the instrument has been preaudited to assure compliance with this subsection."). If such a certificate is required but lacking, "there is no valid contract, and any claim by plaintiff based upon such contract must fail." Data Gen.

11

Corp. v. Cnty. of Durham, 545 S.E.2d 243, 247 (N.C. Ct. App. 2001).

The City contends that any valid contract with the Officers for longevity pay must comply with the preaudit certificate requirement of § 159-28(a), and that the Officers failed to allege the existence of such certificates in their complaints. The Officers agree that they never alleged that preaudit certificates exist, but they contend that § 159-28(a) does not govern their alleged contracts for longevity pay.

The Court of Appeals of North Carolina has held that § 159-28(a) applies only to a "financial obligation that will come due in the year the town incurs the obligation." Myers v. Town of Plymouth, 522 S.E.2d 122, 123 (N.C. Ct. App. 1999) (Wynn, J.). Therefore, "a contract that is signed in one year but results in a financial obligation in a later year will not violate § 159-28(a)." Id. at 126.

Under Myers, the contracts the Officers claim they have with the City need not comply with § 159-28(a) because the Officers allege contractual rights to longevity payments that were formed years ago. For some of the Officers, those rights assertedly "vested" after five years of service. Any continuing rights to receive longevity payments would therefore be financial obligations due more than a year after formation of the alleged contracts.

12

The City, however, urges us not to apply the holding in Myers because it supposedly conflicts with the holding of an earlier case from the same court, Watauga County Board of Education v. Town of Boone, 416 S.E.2d 411 (N.C. Ct. App. 1992). The City misreads Watauga County. The issue in that case was whether a town breached a contract it had formed with a county to provide a certain percentage of its Alcohol Beverage Control Store revenue to the school board. Id. at 412. The court held there was no breach of contract because "it is outside the power of the town council to appropriate money to the county school board." Id. at 413. This central holding did not even concern § 159-28(a); the alleged contract was "void and unenforceable," id., regardless of whether it was accompanied by a preaudit certificate.

The Watauga County court went on to observe, briefly, that even if the town had the power to enter into the contract with the school board, the contract was still "not enforceable because it does not comply with G.S. § 159-28(a)." Id. at 415. The court described the alleged contract at issue as an agreement to designate "18% of [the town's] ABC profits for school board use," and apparently this alleged agreement was followed for three years. Id. at 412. It is not entirely clear, however, whether this alleged agreement was an annual contract renewed twice or a multi-year contract. In any event,

13

nowhere in Watauga County -- or in any of the other cases on which the City relies[2] -- does the court address whether § 159-28(a) applies to contracts of all lengths or only to contracts that "come due" the year they are formed. The Myers court, on the other hand, discusses the distinction in depth. Watauga County and Myers can therefore be read harmoniously: Watauga County briefly confirms the applicability of § 159-28(a) to certain governmental contracts, and Myers clarifies that the statute only requires preaudit certificates for contracts due the year they are formed.

The Court of Appeals of North Carolina itself recently held that Myers states the correct reading of § 159-28(a). See M Series Rebuild, LLC v. Town of Mount Pleasant, 730 S.E.2d 254 (N.C. Ct. App.), rev. denied, 735 S.E.2d 190 (N.C. 2012). In M Series, the court upheld the dismissal of the plaintiff's complaint because the contract at issue did not comply with § 159-28(a). Id. at 261. In reaching that holding, the court emphasized that the case involved "an alleged contract and obligation to pay [that were] both created in the same fiscal year." Id. (emphasis added). Citing Myers, the court

---

[2] See Howard v. Cnty. of Durham, 748 S.E.2d 1 (N.C. Ct. App.), rev. denied, 748 S.E.2d 321 (N.C. 2013); Data Gen. Corp. v. Cnty. of Durham, 545 S.E.2d 243 (N.C. Ct. App. 2001); Cincinnati Thermal Spray, Inc. v. Pender Cnty., 399 S.E.2d 758 (N.C. Ct. App. 1991).

14

emphasized that there is a distinction between cases where the alleged contract and resulting obligation to pay arise in the same year and cases where the obligation to pay comes due in a later year. Id.

The City would have us hold that the Court of Appeals of North Carolina incorrectly interpreted its own precedent. But we see no reason to second-guess the Court of Appeals, which has never read its own interpretations of § 159-28(a) to conflict. The City's arguments to the contrary are best addressed to the North Carolina courts or legislature. Because § 159-28(a) does not apply to the Officers' alleged contracts, the Officers did not need to allege the existence of preaudit certificates.[3]

B.

The City's second basis for challenging the adequacy of the complaints is the claim that the Officers failed to allege that "the contract for longevity pay was written." Appellant Br. (Davis case) 19 (emphasis in original). The Greensboro Charter provides the source for this requirement; it states that "[a]ll contracts, except as otherwise provided for in this Charter,

_____

[3] The City suggests, in a footnote, that even if the Officers are correct in their reading of North Carolina law, they still needed to assert in their amended complaints that "§ 159-28 does not apply" to the alleged contracts. Reply Br. (Davis case) 10 n.9. This is plainly wrong. Nothing requires the Officers -- or any other plaintiff for that matter -- to plead that a law does not apply in order to state a claim upon which relief can be granted.

15

shall be . . . reduced to writing in order to be binding upon the City." City of Greensboro Charter § 4.111. The City cites no authority, however, for the proposition that a plaintiff must allege that a contract be written in order to state a claim for breach of contract.

Moreover, even if the City had pointed to such authority, the Officers' complaints would survive the motions to dismiss. The Officers allege that their Employee Handbook lists longevity pay as a "benefit." Construing all well-pled facts "in the light most favorable to the plaintiff," as we must, Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009), this allegation plausibly satisfies the "reduced to writing" requirement of the City's charter. Further, it is not an "unwarranted inference[]," id., to conclude that the Officers' employment contracts with the City have been reduced to writing. Whether any written contract actually includes a provision on longevity payments constitutes a factual issue to be resolved at a later stage in the litigation.

For these reasons, we hold that the Officers have sufficiently alleged valid contracts with the City. As the City concedes, such allegations prevent a municipality from obtaining dismissal of a complaint on the basis of governmental immunity.

16

Therefore, the district court did not err in denying the City's motions to dismiss the Officers' breach of contract claims.[4]

IV.

In sum, we hold that we have jurisdiction over the orders denying the City's motions to dismiss the Officers' contract and estoppel claims on governmental immunity grounds. We further hold that the district court properly denied the City's motions to dismiss because the Officers have sufficiently alleged that they have valid contracts for longevity pay with the City. Accordingly, the judgments of the district court are

AFFIRMED.

---

[4] The only other causes of action at issue in these appeals are the Officers' equitable and quasi estoppel claims. The City's argument for dismissing these claims rests on the assertion that the Officers and the City have not entered into valid contracts for longevity payments. Because the Officers have sufficiently alleged the existence of such contracts, their estoppel claims must similarly survive the City's motions to dismiss.

17