IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-401

Filed 2 January 2024

Rutherford County, No. 21-CVS-413

TOWN OF FOREST CITY, Plaintiff,

v.

FLORENCE REDEVELOPMENT PARTNERS, LLC, Defendant.

Appeal by Defendant from order entered 12 September 2022 by Judge Bradley B. Letts, and orders entered 16 May and 29 July 2022 by Judge Peter Knight, in Rutherford County Superior Court. Heard in the Court of Appeals 18 October 2023.

*Parker Poe Adams & Bernstein LLP, by Daniel E. Peterson, Anthony A. Fox, and Jasmine N. Little, for Plaintiff-Appellee.*

*Rosenwood, Rose & Litwak, PLLC, by Nancy S. Litwak, for Defendant-Appellant.*

COLLINS, Judge.

Florence Redevelopment Partners, LLC, ("Florence") appeals from an order granting the Town of Forest City ("Town") summary judgment and denying Florence summary judgment on claims arising from a contract dispute. Florence also appeals orders denying its motions to amend and revise its complaint. We affirm in part and reverse in part the summary judgment order and remand for further proceedings. We need not address Florence's arguments regarding the remaining orders.

## I.    Background

In 2018, the Town solicited proposals from developers to rehabilitate the Florence Mill building ("Mill"), a historic property in the Town.  After a series of open session meetings, the Town entered into a contract ("Contract") with Florence to purchase the Mill.  The Contract established a timeline for an inspection period as follows:

> 10.  **Inspection Period.**
>
> a.  <u>Duration.</u>    The period of time beginning with the Effective Date, and ending at 11:59 p.m. on that date which is ninety (90) days after the effective date of this Contract, is hereinafter referred to as "the Inspection Period."
>
> . . . .
>
> c.  <u>Notice of Suitability.</u>  The results of all inspections, tests, examinations and studies of the Property performed during the Inspection Period must be suitable to [Florence], in its sole discretion.  Prior to the expiration of the Inspection Period, [Florence] may notify [the Town] that such results are suitable to [Florence] by delivering to [the Town] a written Notice of Suitability.  If [Florence] does not deliver to [the Town] a valid Notice of Suitability on or before the date of expiration of the Inspection Period, then this Contract shall automatically terminate on that date. . . .

The Contract also provided that "Closing shall be held on or before thirty (30) days after [Florence] provides the Notice of Suitability . . . ."  In addition, the Contract provided that "[t]he following conditions must be satisfied prior to Closing, and this Agreement and the performance of [the Town] and [Florence] hereunder is expressly contingent upon satisfaction of the following:"

> a.  The Parties' (sic) agree to work in good faith to identify

adequate parking within a reasonable distance of the Property to accommodate the anticipated uses by [Florence] prior to the end of the Inspection Period. . . .

. . . .

d. [The Town's] and [Florence's] obligation's (sic) hereunder are contingent upon [the Town] and [Florence] successfully negotiating and entering into a Development Agreement providing for the redevelopment of the Property in accordance with the Master Plan provided by [Florence] to [the Town] . . . .

e. [The Town's] obligation to sell the property is specifically contingent upon [the Town] and [Florence] agreeing on the provisions of a Master Declaration of Easements, Encroachments and Conditions . . . . The Master Declaration of Easements, Encroachments and Conditions shall include the necessary restrictions, covenants, conditions and easements being placed upon the Property . . . . Any such restrictions, covenants, conditions and easements required by [the Town] for the Property shall be agreed upon prior to the expiration of the Inspection Period.

The Contract also contained "Standard Provisions" stating:

b. TIME IS OF THE VERY ESSENCE in the occurrence of all events, the satisfaction of all conditions and the performance of all obligations hereunder.

. . . .

i. Any failure or delay of [Florence] or [the Town] to enforce any term of this Contract shall not constitute a waiver of such term, it being explicitly agreed that such a waiver must be specifically stated in a writing delivered to the other party in compliance with Section 16 above. Any such waiver by [Florence] or [the Town] shall not be deemed to be a waiver of any other breach or of a subsequent breach of the same or any other term.

The "effective date" of the Contract was 25 June 2019, the date on which the

Contract was duly signed. Thus, the 90-day Inspection Period ran from 25 June 2019 through 23 September 2019. Florence failed to deliver the Notice of Suitability within the inspection period, and instead delivered it on 21 October 2019.

Despite the untimely delivery of the Notice of Suitability, the parties continued their dealings for over a year. Between 21 October 2019 and 4 November 2020, the Town and Florence maintained consistent communication with each other. During this time, the Town provided draft term sheets for the Development Agreement and, through a series of emails and phone calls between July and October 2020, the parties negotiated the remaining sale terms to be included in the term sheets. Also during this period, the parties agreed on matters related to electrical, sewer, and water infrastructure for the Mill. However, the parties did not enter into a Development Agreement or agree on a Master Development of Easements, Encroachments and Conditions.

During a meeting on 22 October 2020, Florence informed the Town that it was unable to secure financing from the United States Department of Housing and Urban Development as it had originally intended, and that it would take some time to obtain alternative financing. The Town sent Florence a letter on 4 November 2020 ("Notice of Termination") terminating the Contract:

> On behalf of the Town, please let this letter serve as notice of the Town's termination of the Purchase Contract for failure of the conditions precedent to close on the purchase and sale of the property subject to the Purchase Contract. The Town appreciates the efforts made by [Florence] to

> explore the redevelopment of the [Mill].
>
> By signing this letter on behalf of [Florence] and the Town, respectively, each party acknowledges and agrees the Purchase Contract is terminated and neither party has any claims whatsoever against the other . . . of any right, title, interest, loss, or damage arising out of or related directly or indirectly to the Purchase Contract.

Florence refused to acknowledge the Notice of Termination or agree to the Town's decision to terminate the Contract.

On 13 April 2021, the Town filed a complaint for declaratory judgment on the following issues: (1) Florence breached the Contract by failing to close on the Mill; (2) the Contract had automatically terminated because Florence failed to deliver the Notice of Suitability on or before 23 September 2019; and (3) the Contract was void because it lacked a pre-audit certificate required by State law. The Town prayed for a declaration that the Contract is null and void, distribution of the escrow funds to the Town, and an award of costs and attorney's fees.

Florence filed an answer and asserted counterclaims for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, and (4) declaratory judgment in their favor "as to the claims asserted by the Town" – essentially that the Town breached the Contract and Florence did not. Florence prayed for judgment in its favor, declaratory judgment in its favor, damages or specific performance, and an award of costs and attorney's fees.

The Town answered Florence's counterclaims, denying the substantive

allegations and asserting various affirmative defenses, including governmental immunity. Florence filed a motion for leave to amend to assert additional counterclaims, which the trial court denied. Shortly thereafter, Florence filed a "Motion for Revision and/or Reconsideration of Order" arguing that the trial court should reconsider its order denying Florence's motion for leave to amend. The trial court also denied this motion.

Florence moved for summary judgment on the Town's three claims and on its own first, second, and fourth counterclaims. The Town moved for summary judgment on all of its claims and all of Florence's counterclaims. After a hearing, the trial court entered an order on 12 September 2022, deciding as follows:

- granting the Town, and denying Florence, summary judgment on the Town's second claim (Contract termination for untimely Notice of Suitability) and third claim (Contract void for lack of pre-audit certificate);
- granting the Town, and denying Florence, summary judgment on Florence's four counterclaims;
- denying Florence summary judgment on the Town's first claim (Florence breached the Contract); and
- determining the Town's motion for summary judgment on its first claim to be moot.

Florence timely appealed.

## II. Standard of Review

Florence argues that the trial court erred by granting the Town, and denying Florence, summary judgment.

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2022). The standard of review of a trial court's order granting or denying summary judgment is de novo. *Butterfield v. Gray*, 279 N.C. App. 549, 553, 866 S.E.2d 296, 300 (2021). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Carolina Mulching Co. v. Raleigh-Wilmington Invs. II, LLC*, 272 N.C. App. 240, 245, 846 S.E.2d 540, 544 (2020) (quotation marks and citation omitted).

## III. Discussion

### A. Pre-audit Certificate (the Town's third claim)

Florence first argues that the trial court erred by granting the Town, and denying Florence, summary judgment on the Town's request for a declaration that the Contract was void because it lacked a pre-audit certificate. Florence specifically argues that a pre-audit certificate was not required because the Town had no financial obligation due under the Contract within the fiscal year that the Contract was formed.

Pursuant to N.C. Gen. Stat. § 159-28 governing town budgetary accounting for appropriations,

> [n]o obligation may be incurred in a program, function, or activity accounted for in a fund included in the budget ordinance unless the budget ordinance includes an

appropriation authorizing the obligation and an unencumbered balance remains in the appropriation sufficient to pay in the current fiscal year the sums obligated by the transaction for the current fiscal year.

N.C. Gen. Stat. § 159-28(a) (2022). "If an obligation is reduced to a written contract . . . requiring the payment of money, . . . the written contract . . . shall include on its face a certificate stating that the instrument has been preaudited to assure compliance with subsection (a) of this section." *Id.* § 159-28(a1) (2022). "An obligation incurred in violation of subsection (a) or (a1) of this section is invalid and may not be enforced." *Id.* § 159-28(a2) (2022).

"The purpose of the pre-audit certificate is to ensure that a town has enough funds in its budget to pay its financial obligations." *Myers v. Town of Plymouth*, 135 N.C. App. 707, 713, 522 S.E.2d 122, 126 (1999). "The language of the statute makes the pre-audit certificate a requirement when a town will have to satisfy an obligation in the fiscal year in which a contract is formed." *Id.* (emphasis omitted). Such "a contract for payment that has not been preaudited is invalid and unenforceable." *Id.* (citations omitted); *see also Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 103, 545 S.E.2d 243, 247 (2001). However, "a contract that is signed in one year but results in a financial obligation in a later year will not violate § 159-28(a)." *Myers*, 135 N.C. App. at 714, 522 S.E.2d at 126.

In *Myers*, the plaintiff entered into an employment contract with the town of Plymouth two months before the end of its fiscal year. *Id.* at 709, 522 S.E.2d at 123.

The contract provided for a severance package by which Plymouth would pay the plaintiff certain compensation upon his termination. *Id.* The plaintiff was fired a day before he completed his first year of employment, and Plymouth refused to pay the severance compensation. *Id.* at 709, 522 S.E.2d at 123-24. The plaintiff sued Plymouth for breach of contract. *Id.* at 709, 522 S.E.2d at 124.

On appeal, Plymouth claimed that the employment contract was invalid because it did not include a pre-audit certificate. *Id.* at 713, 522 S.E.2d at 126. Plymouth argued that a pre-audit certificate was required because, if the plaintiff had been fired during the first two months of his employment, the contract would have imposed a financial obligation on Plymouth within its current fiscal year. *Id.* at 714, 522 S.E.2d at 126. This Court rejected Plymouth's argument and held that the employment contract was valid:

> Presumably, neither [the plaintiff] nor [] Plymouth thought that [the plaintiff] would be fired within a mere two months after the contract was signed, and indeed he was not fired within that time. We recognize that the improbability of termination did not mean that termination was *impossible* during that two-month period. However, we will not invalidate the contract due to its lack of a pre-audit certificate when the mere *possibility* of an expense in the first year never in fact resulted in an obligation.

*Id.*

Here, the Town entered into the Contract with Florence on 25 June 2019, five days before the Town's fiscal year ended on 30 June 2019. The Contract did not require the Town to satisfy a financial obligation during this timeframe.

- 9 -

Furthermore, the Town does not argue, and the record does not show, that the Town incurred any expense under the Contract before the end of the 2019 fiscal year.

The Town argues that, had the parties closed on the Contract in the five days before the end of the fiscal year, the Town could have had to pay for deed preparation, closing costs, attorney's fees, liens, and taxes. We recognize that the improbability of closing during that five-day period did not mean that closing was *impossible* during that period. *See id.* However, as in *Myers*, "we will not invalidate the [C]ontract due to its lack of a pre-audit certificate when the mere *possibility* of an expense in the first year never in fact resulted in an obligation." *Id.*

The Town also argues that because the Contract gave the Town the option to repurchase the Mill if Florence did not secure a construction loan, a pre-audit certificate was required. However, the Town's option to repurchase the Mill was not triggered until "after a period of twenty-four (24) months from the Closing" and could not have resulted in an expense in the fiscal year in which the Contract was executed.

Because a pre-audit certificate was not required, the Contract was not void as a matter of law for a lack of pre-audit certificate. Accordingly, the trial court erred by granting the Town summary judgment and by denying Florence summary judgment on this claim.[1]

---

[1] In light of this conclusion, we need not address Florence's arguments that the trial court erred by denying its motion to amend and motion to revise.

**B. Automatic Termination (the Town's second claim)**

Florence next argues that the trial court erred by granting the Town, and denying Florence, summary judgment on the Town's request for a declaration that the Contract had automatically terminated because Florence failed to deliver the Notice of Suitability on or before 23 September 2019. Florence specifically argues that the Town waived the Contract's Notice of Suitability deadline, the "time is of the essence" provision, and the "no waiver" provision by continuing to perform under the Contract.

It has long been the law in North Carolina that "[t]he provisions of a written contract may be modified *or waived* . . . by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived." *42 East, LLC v. D.R. Horton, Inc.*, 218 N.C. App. 503, 511, 722 S.E.2d 1, 6-7 (2012) (quoting *Whitehurst v. FCX Fruit & Vegetable Serv., Inc.*, 224 N.C. 628, 636, 32 S.E.2d 34, 39 (1944)). Our Supreme Court has held that "a party may waive the breach of a contractual provision or condition without consideration or estoppel . . . by continuing to perform or accept the partial performance of the breaching party." *Wheeler v. Wheeler*, 299 N.C. 633, 639, 263 S.E.2d 763, 767 (1980).

This holding applies equally to a contract's "no waiver" provision "based on the view that the nonwaiver clause itself, like any other term of the contract is subject to waiver by agreement or conduct during performance." *42 East*, 218 N.C. App. at 511, 722 S.E.2d at 7 (quotation marks and citation omitted). Likewise, "[o]ur Supreme

Court has specifically applied this reasoning with respect to a contract providing both that 'time is of the essence' and that substantial modifications of the contract must be in writing." *Id.* (citing *Childress v. C. W. Myers Trading Post, Inc.*, 247 N.C. 150, 156, 100 S.E.2d 391, 395 (1957)). "Waiver is a matter of law to be determined by the court where the facts are not disputed." *Johnson v. Dunlap*, 53 N.C. App. 312, 316, 280 S.E.2d 759, 762 (1981) (citation omitted).

Here, the undisputed facts show the following: The Town accepted Florence's Notice of Suitability approximately 28 days after the deadline specified in the Contract. After accepting the late Notice, the Town continued to perform and accept Florence's performance *for more than a year after the deadline.* After the 23 September 2019 deadline passed, the Town and Florence maintained consistent communication with one another. The parties exchanged emails and phone calls and negotiated matters related to electrical, sewer, and water infrastructure for the Mill, and the Town provided draft term sheets for the Development Agreement.

It was not until 4 November 2020, over one year after the Town accepted the untimely Notice of Suitability, that the Town sent Florence a Notice of Termination. The Notice of Termination does not allege that the Contract terminated because of the untimely Notice of Suitability, but instead alleges the "failure of the conditions precedent to close on the purchase and sale of the property" as the reason for termination.

The undisputed facts establish conduct that naturally would lead Florence to

believe that the Town had dispensed with its right to insist that the Notice of Suitability be delivered by 23 September 2019. Accordingly, the trial court erred by granting the Town summary judgment and denying Florence summary judgment on this claim.

## C. Governmental Immunity (Florence's first, second, and fourth counterclaims)

Florence argues that the trial court erred by granting the Town summary judgment on Florence's first, second, and fourth counterclaims because governmental immunity does not apply. The Town argues that governmental immunity bars these claims.[2]

> It is a fundamental rule that sovereign immunity renders this state, including counties and municipal corporations herein, immune from suit absent express consent to be sued or waiver of the right of sovereign immunity. Furthermore, counties and municipal corporations within this state enjoy governmental immunity from suit for activities that are governmental, and not proprietary, in nature. Nonetheless, a governmental entity may waive its governmental immunity, for instance, where the entity purchases liability insurance. Additionally, where the entity enters into a valid contract, the entity "implicitly consents to be sued for damages on the contract in the event it breaches the contract.

*Data Gen. Corp.*, 143 N.C. App. at 100, 545 S.E.2d at 246 (citations omitted).

The Town argues that no valid contract was formed because a pre-audit

---

[2] Although the trial court gave no rationale for granting summary judgment in the Town's favor on these claims, the parties' only argument for and against summary judgment at both the hearing and on appeal relates to governmental immunity.

certificate was required. However, as analyzed above, no pre-audit certificate was required. As the Contract was not invalid for lack of a pre-audit certificate, and the Town makes no argument that the Contract was otherwise invalid, the Town waived governmental immunity by entering into a valid contract.[3]

The trial court thus erred by granting the Town summary judgment on Florence's first, second, and fourth counterclaims based on governmental immunity.

**D. Unjust Enrichment (Florence's third counterclaim)**

Florence argues that the trial court erred by granting the Town summary judgment on Florence's third counterclaim for unjust enrichment. Florence makes this argument in the event we conclude that the lack of a pre-audit certificate rendered the Contract invalid.

It is true that "a person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 555-56 (1988) (brackets and citation omitted). However, "[t]he doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' and thus will not apply here where a contract exists between two parties." *Atlantic & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 (2004) (citation omitted). Because no pre-audit certificate was required, there was a valid contract between the parties and Florence cannot maintain an action for unjust

---

[3] In light of this conclusion, we need not address whether the Town was acting in a governmental or a proprietary capacity with regard to the redevelopment project.

enrichment.

The trial court did not err by granting the Town, and denying Florence, summary judgment on this counterclaim.

## E. Contract Claims (the Town's first claim and Florence's first, second, and fourth counterclaims)

Florence argues that the trial court erred by denying Florence summary judgment on the Town's first claim and Florence's first, second, and fourth counterclaims. This argument is deemed abandoned.

Under our Rules of Appellate Procedure, an appellant's brief must include "[a]n argument, to contain the contentions of the appellant with respect to each issue presented." N.C. R. App. P. 28(b)(6). "The body of the argument . . . shall contain citations of the authorities upon which the appellant relies." *Id.* "Issues . . . in support of which no reason or argument is stated, will be taken as abandoned." *Id.*

This Court has routinely held an issue to be abandoned where an appellant presented argument without citations to the authorities upon which the appellant relied. *See, e.g., K2HN Constr. N.C., LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 213-14, 832 S.E.2d 559, 564 (2019) ("Each argument in Plaintiff's brief violates Rule 28(b)(6). For example, Plaintiff's arguments that genuine issues of material fact exist concerning its breach of contract, unjust enrichment, fraud, and unfair and deceptive trade practices claims cite no authority establishing: (1) what the elements of those claims are; or (2) how the evidence demonstrates the existence of any genuine

issue of material fact pertinent to those elements or any of Defendants' defenses pled and argued below. Plaintiff has, as a result, abandoned these arguments."); *see also Fairfield v. WakeMed*, 261 N.C. App. 569, 575, 821 S.E.2d 277, 281 (2018) ("Plaintiffs do not cite any legal authority in support of this argument as required by the North Carolina Rules of Appellate Procedure. Therefore, we deem this issue to be abandoned." (citation omitted)).

Florence fails to cite a single legal authority in its argument, or anywhere else in its brief, to establish, at a minimum, the elements of the claims or how the evidence demonstrates the existence of any genuine issue of material fact pertinent to those elements. This argument is deemed abandoned, N.C. R. App. 28(b)(6), and the portion of the trial court's order denying Florence summary judgment on the Town's first claim and Florence's first, second, and fourth counterclaims is affirmed.

## IV. Conclusion

For the foregoing reasons, we conclude as follows:

The trial court erred by granting the Town summary judgment, and denying Florence summary judgment, on the Town's third claim–declaratory judgment that the Contract was void because it lacked a pre-audit certificate. This portion of the judgment is reversed and remanded to the trial court for entry of summary judgment in Florence's favor. In light of this conclusion, we need not address Florence's arguments that the trial court erred by denying its motion to amend and motion to revise.

The trial court erred by granting the Town summary judgment, and denying Florence summary judgment, on the Town's second claim–declaratory judgment that the Contract had automatically terminated based on Florence's failure to timely deliver the Notice of Suitability. This portion of the judgment is reversed and remanded to the trial court for entry of summary judgment in Florence's favor.

The trial court erred by granting the Town summary judgment on Florence's first, second, and fourth counterclaims based on governmental immunity. This portion of the order is reversed.

The trial court did not err by granting the Town summary judgment, and denying Florence summary judgment, on Florence's third counterclaim–unjust enrichment. This portion of the order is affirmed.

The portion of the trial court's order denying Florence summary judgment on the Town's first claim–declaratory judgment that Florence breached the Contract by failing to close on the Mill–and Florence's first, second, and fourth counterclaims is affirmed.

This matter is remanded to the trial court for further proceedings on the Town's first claim and Florence's first, second, and fourth counterclaims.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Judges GORE and FLOOD concur.